**2021 UT App 54**

## THE UTAH COURT OF APPEALS

HANK C. HANSEN AND TIFNIE ANN HANSEN,
Appellees,
*v.*
KURRY JENSEN PROPERTIES LLC AND KURRY JENSEN,
Appellants.

Opinion
No. 20191039-CA
Filed May 27, 2021

Seventh District Court, Castle Dale Department
The Honorable Douglas B. Thomas
No. 180700004

Timothy R. Pack, Attorney for Appellants

D. Shane Clifford, Attorney for Appellees

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and JILL M. POHLMAN concurred in
part. JUDGE MORTENSEN filed an opinion concurring specially, in
which JUDGE POHLMAN concurred.

ORME, Judge:

¶1      Kurry Jensen Properties, LLC, and Kurry Jensen
(collectively, Jensen) appeal the district court's ruling that Hank
C. Hansen and Tifnie Ann Hansen proved their boundary by
acquiescence claim by clear and convincing evidence. Jensen also
challenges the court's denial of two motions for summary
judgment and a motion in limine to bar the testimony of the
Hansens' witnesses at trial due to the Hansens' violation of rule
26 of the Utah Rules of Civil Procedure. We affirm.

## BACKGROUND[1]

### *Boundary Line*

¶2    In 2015, Jensen purchased a parcel of land (the Jensen property) from Flora and Richard Motte. At the time of sale, Flora[2] had lived on the Jensen property for sixty-five years. In 2016, Victoria Hansen,[3] Flora's niece, inherited the property to the west of the Jensen property (the Hansen property) from her parents, Mickie and Clifton Carter, and she subsequently conveyed it to the Hansens. The Jensen property and the Hansen property share a deeded boundary line of approximately 450 feet running north to south, with the front of the properties facing south.

¶3    In 1977, the Carters built a carport next to their garage at the front of the Hansen property. The garage and carport both extend approximately ten feet beyond the deeded demarcation (the claimed boundary line). *See* Appendix. In 1983, the Carters also erected a chain link fence along the western side of the

---

1. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard," presenting conflicting evidence only "to the extent necessary to clarify the issues raised on appeal." *Kidd v. Kidd*, 2014 UT App 26, ¶ 2 n.1, 321 P.3d 200 (quotation simplified).

2. Because some individuals in this case share the same surname, we refer to them by their first names, with no disrespect intended by the apparent informality.

3. Victoria Hansen is Hank Hansen's mother. She grew up and lived on the Hansen property from 1957 until 1981 and thereafter regularly returned to visit her parents, who lived on the property until their deaths in 2015 and 2016.

carport. At the back of the property, arranged roughly in a straight line behind the garage and extending approximately ten feet over the deeded property line, is a shed with a nearby fence, a rodeo arena, and an additional fence.

¶4     In 2018, Jensen, acting unilaterally, removed the fences near the shed and at the back of the property and began building a fence approximately ten feet to the east along the deeded boundary line, prompting the Hansens to file suit in district court. In their verified complaint,[4] they asserted that the lawful boundary between the two properties had been established through acquiescence. They further claimed that the true property line was to the west of the deeded boundary as "marked by monuments, fences, and buildings."

*First Motion for Summary Judgment*[5]

¶5     Jensen moved for summary judgment, arguing that "because the Hansens failed to submit initial disclosures, disclose any witnesses, trial witness testimony, documents, or any other evidence to support their claims as required by Utah R. Civ. P. 26(a)(1) . . . the Hansens cannot meet their burden of

---

4. In verifying the complaint, Hank declared under criminal penalty that, with the exception of the few facts he specifically alleged in the complaint to be based upon information and belief, he had personal knowledge of the facts alleged and that those facts were true.

5. With respect to both the first and second motions for summary judgment, we describe in some detail what was before the district court and how the court ruled because the availability of appellate review of a denial of summary judgment, once a trial culminating in a final judgment has been held, turns on the basis for that denial. *See, e.g., Arnold v. Grigsby*, 2018 UT 14, ¶ 15, 417 P.3d 606; *Kerr v. City of Salt Lake*, 2013 UT 75, ¶ 29, 322 P.3d 669.

proof as a matter of law." The Hansens responded by directing the court to their verified complaint that identified "potential witnesses" as the Hansens, Kurry Jensen, Victoria, Richard, and Flora, and that contained "three photographs of the disputed boundary area" as well as "an aerial photograph of the [properties], with actual boundary designations and proposed boundary designations." The Hansens argued that because Jensen "had actual knowledge of potential witnesses and received copies of relevant documents (which [Jensen] rel[ied] upon in support of [his] Motion for Summary Judgment), any technical failure to make 'initial disclosures' was harmless" pursuant to rule 26(d)(4) of the Utah Rules of Civil Procedure.

¶6     The district court denied Jensen's summary judgment motion, stating that its focus on the motion was "simply to see whether or not the requirements to grant a motion for summary judgment have been met . . . , or whether or not there's a factual dispute that would preclude summary judgment." It explained that "[t]he verified complaint contains allegations and conclusions, but it also contains alleged facts which support the elements of the claim[]" of boundary by acquiescence. Specifically, the court noted that Hank averred in the complaint that the garage "along with a fence that Mr. Jensen has allegedly torn down, have acted as the actual physical boundary." The court, pointing to the garage as an example, observed that Hank averred "that a mutual understanding of acquiescence between current and former property owners had existed for at least 20 years" and that Jensen had respected that boundary for three years following his purchase. Thus, the court determined that "a genuine issue of material fact" existed and, on that basis, the court denied Jensen's motion.

*Motion in Limine*

¶7     Following the district court's denial of their first motion for summary judgment, Jensen filed a motion in limine seeking to exclude the Hansens' trial witnesses. Jensen asserted that

because "the Hansens failed to submit initial disclosures as required by Utah R. Civ. P. 26(a)(1), and thus failed to disclose any individuals who would testify at trial, let alone a summary of the expected trial testimony," the "[d]isclosure of any witnesses at this point would be highly prejudicial to Jensen's ability to defend against the Hansens' claims." The Hansens opposed the motion, arguing that their "very detailed" verified complaint provided "actual notice of the names of all potential witnesses, and . . . informed [Jensen] of the precise nature of their expected testimony." Therefore, they argued, "any technical failure to repeat the contents of the Verified Complaint in a document titled 'initial disclosures' was harmless."

¶8     The court denied the motion, stating that "this is a razor thin case" and that even though the court "routinely enforces Rule 26 disclosures," it was not going to do so in this case because of the case's "unique" nature. In the court's view, the case was "a very straightforward claim with respect to the boundary by acquiescence . . . dispute," and it was obvious that the testimony of former owners, who were all named in the complaint, would be necessary. Therefore, the court ruled that because Jensen was aware of the complaint that named these individuals, and of "their role in the case and the nature of the pleadings and the allegations," as well as "the overall general substance of boundary markers," it was "a harmless omission" not to disclose this information "where there was so much information already disclosed in the complaint." The court did, however, offer Jensen the option of reopening discovery to take any deposition they desired. It also ordered the Hansens to comply with rule 26 and disclose summaries of their witnesses' testimonies, which they promptly did.

*Second Motion for Summary Judgment*

¶9     After denial of their motion in limine, Jensen obtained an affidavit from Flora, in which she stated,

> There has never been any fences, walls, monuments or other objects marking a boundary line between what is currently the Jensen and the Hansen properties to the north of the Hansens' carport and house and neither my husband nor I, nor my parents nor the Carters ever treated any particular line, visible or otherwise, as the boundary between what is now the Jensen and the Hansen properties.

> In fact, on the north the chain link fence between [the properties] came to an end at about the same place that the carport stopped and, although we did not know where the deeded description was because it had never been surveyed, we had generally treated and agreed that the deeded descriptions were the boundary line between the respective properties, not necessarily the chain link fence.

¶10   Based on this affidavit,[6] Jensen again moved for summary judgment, arguing "that the Hansens misrepresented to the Court that the Mottes acquiesced to the boundary line." Jensen continued, "because the Mottes themselves affirm that there was no acquiescence . . . , the Court should enter summary judgment in favor of Jensen." In opposing this motion, the

---

6. Jensen had brought suit against the Mottes seeking $130,000 in damages and attorney fees. Jensen claimed that the Mottes breached obligations and covenants under the warranty deed that conveyed the Jensen property to Jensen. Among other things, Jensen asserted that the Mottes misrepresented "that they had good right to convey the entire Jensen Property to Jensen" and "that the entire Jensen Property was free from all encumbrances." Kurry Jensen testified at trial that this suit was eventually settled.

Hansens submitted a declaration by Victoria contradicting Flora's affidavit by stating that there "was always a fence" and other markers between the properties. Jensen responded that the Hansens could not prove mutual acquiescence and that the court should grant summary judgment because Victoria's affidavit did not focus on the mutual acquiescence element of their claim, whereas Flora clearly stated that she never acquiesced.

¶11    The court denied the motion. It ruled that even though the Mottes planned on testifying "that the boundary of the property was never acquiesced to[,] [t]hat fact alone does not settle the dispute of acquiescence" for purposes of summary judgment. It further ruled that Victoria's and Flora's affidavits created "disputes as to whether or not the Mottes acquiesced to a boundary line as delineated by the [Hansens] through trees, fences, buildings, et cetera, and for that reason [Jensen's] motion for summary judgment is denied."

*Trial*

¶12    The case proceeded to a one-day bench trial at which Victoria, Hank, Flora, Richard, and Kurry Jensen testified. Victoria testified about the following markers, from the front of the property to the back, that delineated the claimed boundary line for more than 20 years: the stump of a tree that the Mottes had required the Carters to care for and eventually remove (even though it was on the Jensen property, then owned by the Mottes, according to the deeds), a carport, a chain link fence on the side of the carport, a garage, a small area of fenced-in apricot trees, a storage shed behind the garage, a fence along the back portion of the properties, a rodeo arena, and a round corral fence. Victoria also testified that the Mottes and her parents, the Carters, "all treated the fence as the boundary line." Hank then testified that there is "an elevation difference right where the fence line went south towards the front of the yard" along the claimed boundary line and that broken fence posts from that fence still remained after Jensen removed it.

¶13    Flora then testified that she "believe[d] the boundary line was west of the carport." She also acknowledged that she did not "complain[] that the Carters' corral went over the [deeded] boundary." But she also testified that "there was no recognized boundaries" and that they "shared everything," including the backyard, the corrals, and the gardens. Flora explained that neither her family nor the Carters ever treated the fence in the middle of the properties, originally used to enclose the apricot orchard, as a boundary marker, which was also the case with the shed. She also testified that the corral and rodeo fencing were not used as a boundary marker but simply to contain livestock, and that there was no fencing in the back of the property other than the corral and rodeo fences. She explained that the linear elevation difference between the properties was a result of the property being slanted, and not the result of a former fence line. She did not explain why fence remnants were still discernible, as memorialized in photographic evidence. When asked whether she knew "exactly where . . . the legal deeded boundary was between the . . . properties," Flora responded that she did not know but figured the actual boundary was the deeded boundary. Finally, Flora reaffirmed the statements contained in her affidavit.

¶14    Richard then testified that he believed the boundary line "was west of the carport" and that he had never objected to the carport being there or "sa[id] that it was . . . over . . . the boundary." He also testified that he had never "treat[ed] any fence, any tree, any building, any structure, any bush, any stump as the boundary line between the [properties]."

¶15    After hearing the relevant testimony, the court entered its findings of fact and conclusions of law. The court found that "Victoria Hansen [was] a credible witness who has a clear recollection of relevant facts which is consistent with the physical evidence on the ground." The court also found that "Flora Motte, Richard Motte, and Kurry Jensen [were]

less credible than Victoria Hansen. Their testimony was, at times, internally inconsistent and/or inconsistent with the physical evidence on the ground." Specifically, the court noted that Flora's testimony was "particularly troubling" because she "denied that there was any fence in the back" of the properties, but the evidence presented at trial, even evidence Jensen presented, showed "that there was in fact a fence there, which really impacted the credibility of [Flora]." Regarding Richard's testimony, the court found that even though Richard testified "that he assumed that the boundary was west of the carport[,] [h]e acknowledged he didn't know where the boundary was, and he indicated [that] it could have been either way, but in light of the fact that there was a chainlink fence there," the court found it "consistent with an actual acquiesce [to] that . . . boundary." The court concluded that there was no evidence that Richard "ever voiced any objection to the fence, or indicated that it was not being treated as a boundary line, that there was any kind of activity that was being utilized on the [Hansen] side of the fence by the Mottes."

¶16　Ultimately, the court ruled as follows:

> For a very long period of time, well in excess of 20 years, the owners of the [properties] recognized and acquiesced to a common boundary marked by monuments, fences, and buildings. This common boundary was and is located approximately 10 feet west of the surveyed boundary [line].
>
> The monuments, fences, and buildings which marked the recognized common boundary between the [properties] include the following:
>
>> a. The Hansens' carport, built in approximately 1977.

> b. A chain link fence on the west side of the Hansens' carport, built in approximately 1983.
>
> c. A tree on the west side of the front of the Hansens' driveway, which was removed at the Carters' expense . . . .
>
> d. The Hansens' garage, located north of the Hansens' carport.
>
> e. A shed located north of the Hansens' carport and garage.
>
> f. A fence along the recognized boundary near the shed, a remnant of which was removed by Kurry Jensen.
>
> g. A fence on the recognized back portion of the subject properties, a remnant of which was removed by Kurry Jensen.
>
> h. A rodeo arena located primarily on the Hansen Property, but which extended past the surveyed boundary onto the . . . Jensen Property in a manner consistent with the property owners' understanding of the recognized boundary between the subject properties.

There is no evidence that any owner of the . . . Jensen Property ever considered any part of the Hansens' carport to be part of the . . . Jensen Property.

Kurry Jensen removed fences which would have been helpful in establishing the location of the

recognized boundary [between] the back of the [properties].

Although Kurry Jensen removed fences, a broken fence post remained. This broken fence post was spray painted and photographed by Hank Hansen to illustrate where a boundary fence was located before fences were removed by Kurry Jensen.

A noticeable elevation difference, consistent with the existence of a longstanding boundary fence, represents the approximate location of a common boundary by acquiescence between the back portion of the [properties].

¶17　The court then set the boundary between the properties along the claimed boundary line. Jensen appeals.

ISSUES AND STANDARDS OF REVIEW

¶18　Jensen raises three issues. First, they assert that the district court erred in denying their two motions for summary judgment. Ordinarily, "we review a district court's decision to grant summary judgment for correctness, granting no deference to the district court's conclusions." *Gillmor v. Summit County*, 2010 UT 69, ¶ 16, 246 P.3d 102 (quotation simplified). But the matter comes to us in a much different posture when the court denies a motion for summary judgment—or, as here, two such motions—and the case proceeds to trial. "We do not review on appeal . . . whether a dispute of material fact existed at the summary judgment stage of a litigation [that proceeds to trial] if the trial court denies summary judgment." *Kerr v. City of Salt Lake*, 2013 UT 75, ¶ 29, 322 P.3d 669.

¶19　Second, Jensen contends that the court erred in denying their motion in limine to exclude the Hansens' fact witnesses as a

sanction pursuant to rule 26(d)(4) of the Utah Rules of Civil Procedure. "We review a district court's interpretation of our rules of civil procedure, precedent, and common law for correctness." *Keystone Ins. Agency v. Inside Insurance*, 2019 UT 20, ¶ 12, 445 P.3d 434. But in reviewing a district court's determination with respect to harmlessness and good cause, our review is necessarily deferential. This is because "[a] court's decision in discovery matters is a discretionary call, and . . . we will affirm such decisions when the court's discretion was not abused, even if we or another court might have made a different decision in the first instance." *Segota v. Young 180 Co.*, 2020 UT App 105, ¶ 22, 470 P.3d 479 (quotation simplified).

¶20   Third, Jensen asserts that the court erred in determining that the Hansens proved their boundary by acquiescence claim at trial with the requisite clear and convincing evidence. "We review the trial court's conclusions of law on this issue for correctness, according the trial court no particular deference," but "we will not reverse the findings of fact of a trial court sitting without a jury unless they are clearly erroneous." *RHN Corp. v. Veibell*, 2004 UT 60, ¶ 22, 96 P.3d 935 (quotation simplified).

ANALYSIS

I. Summary Judgments

¶21   Jensen asserts that the district court erred in denying both of their summary judgment motions. But for a summary judgment decision to be "reviewable following a trial," it must be "based on a purely legal question or on undisputed facts." *Arnold v. Grigsby*, 2018 UT 14, ¶ 15, 417 P.3d 606. *See also Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 15, 215 P.3d 152 ("When a court denies a motion for summary judgment on a purely legal basis, that is where the court denies the motion based on the undisputed facts, rather than because of the

existence of a disputed material fact, the party denied summary judgment may challenge that denial on appeal.").

¶22 Here, when the district court denied Jensen's first motion, it ruled that disputes of material fact existed because the verified complaint "contains alleged facts which support the elements of the claim" of boundary by acquiescence. And in denying the second motion, the court ruled that Victoria's and Flora's affidavits created "disputes as to whether or not the Mottes acquiesced to a boundary line as delineated by the [Hansens] through trees, fences, buildings, et cetera." "We therefore decline to review the trial court's summary judgment decision[s]" because the "court expressly denied [Jensen's] motion[s] based on the existence of disputed facts," and a trial was subsequently held to adjudicate those facts. *See Arnold*, 2018 UT 14, ¶ 15.

## II. Rule 26 Motion in Limine[7]

¶23 Jensen asserts that the district court erred in not excluding the Hansens' witnesses as a discovery sanction pursuant to rule 26(d)(4) of the Utah Rules of Civil Procedure because the Hansens did not timely disclose their witnesses or a summary of the witnesses' testimony as part of their required initial disclosures under rule 26(a)(1).[8] In relevant part, rule 26(a)(1)

---

7. In view of Judge Pohlman's concurrence in Judge Mortensen's opinion, only the result reached in this section has unanimous support. On those points where Judge Mortensen's opinion is at variance with the discussion in this section, his opinion controls.

8. Jensen also contends that the district court erred in finding that "the Hansens adequately disclosed summaries of witnesses' testimonies" in their verified complaint and in determining "that the Hansens could satisfy their Rule 26 disclosure obligations with 'general' allegations in a complaint." This is not what the court did. Rather, the court stated that, for purposes of assessing

(continued…)

requires parties to serve initial disclosures "without waiting for a discovery request," which disclosures must include "the name and, if known, the address and telephone number" of each witness they may call at trial as well as a summary of their testimony. Utah R. Civ. P. 26(a)(1)(A)(ii). If a party fails to serve these disclosures, "that party may not use the undisclosed witness . . . at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." *Id.* R. 26(d)(4).

¶24 Here, the district court determined that while the Hansens failed to comply with rule 26(a)(1)(A)(ii), the failure was harmless. On that basis, it denied Jensen's motion to exclude the Hansens' witnesses under rule 26(d)(4). Jensen contends that this ruling was erroneous because "while the district court may have discretion to reopen fact discovery or set discovery deadlines, it did not have discretion to stray from Rule 26(d)(4)'s explicit instruction to exclude the witnesses." This argument is unavailing.

¶25 The court did not "stray from Rule 26(d)(4)'s explicit instruction to exclude the witnesses" as Jensen contends. While rule 26(d) does contemplate that excluding witnesses in such circumstances will be the norm, it does not absolutely require courts to do so, as Jensen suggests. Rather, a court is not required to exclude witnesses if, in its discretion, it finds that "the failure is harmless or the party shows good cause for the failure." *Id. See also Dahl v. Dahl*, 2015 UT 79, ¶ 63, 459 P.3d 276

---

(…continued)

whether Jensen was harmed, the verified complaint contained sufficient information to render the mistake in not serving their initial disclosures harmless. The court did not rule that the complaint was compliant with rule 26(a)(1). In fact, after finding that it was harmless for the Hansens not to have served their initial disclosures in a timely fashion, it ordered the Hansens to do so forthwith, which they did.

("[W]e grant district courts a great deal of deference in matters of discovery and review discovery orders for abuse of discretion."). While one or more members of this panel might have handled the matter differently, we review the decision only for an abuse of discretion. *See Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2015 UT App 261, ¶ 24, 361 P.3d 703 (Orme, J., and Toomey, J., concurring) (noting that "[i]n short, while we think the trial judge made the wrong call, it was, in its essence, a discretionary call—and one that was within the broad range of discretion entrusted to him"). *See also Berger v. Ogden Reg'l Med. Center*, 2020 UT App 85, ¶ 15, 469 P.3d 1127 ("When reviewing a district court's exercise of discretion, we will reverse only if there is no reasonable basis for the district court's decision.") (quotation simplified).

¶26   There was no abuse of discretion here because a reasonable basis existed for the court's decision, namely, that although the Hansens' verified complaint did not satisfy rule 26(a)(1), it did put Jensen on notice of who would be testifying and the general nature of their testimony. The complaint stated that previous owners, including Victoria, recognized and acquiesced to a boundary different from that contained in their deeds. Specifically, the complaint stated that "[f]or a period of many decades . . . the owners of [both properties] recognized a common boundary marked by monuments, fences, and buildings." It also claimed that for more than 20 years, "there was a visible line between the [properties] marked by monuments, fences, and buildings" and "the owners of [both properties] considered the visible line marked by monuments, fences, and buildings to be the boundary between the properties, and they mutually acquiesced to the same." While the complaint did not go into the same detail on the markers and boundaries as the Hansens' belated rule 26 disclosures did, the court could reasonably conclude that the complaint provided Jensen sufficient notice that the Hansens were relying on the markers and monuments that would have been clearly visible to Kurry

Jensen: the carport, chain link fence, garage, shed, rodeo corral, and the remnants of the old fencing in the back of the property—the very fencing that Jensen removed in their effort to relocate the boundary to that established by the parties' deeds. Furthermore, the Hansens objected to Jensen moving that boundary before they filed their complaint, and thus Jensen cannot plausibly claim that they did not know what markers and monuments would have been the basis for the Hansens' claim. The district court could reasonably conclude, even though another judge might have taken a stricter approach, that this information in the complaint was enough to have given Jensen notice of the substance of the Hansens' claim, rendering any error in not disclosing more specific information harmless.

¶27    Also, this was not a complicated boundary by acquiescence case involving, for instance, testimony from long lost prior owners, experts relying on aerial photography, or the like. The district court could reasonably conclude that Jensen knew the former owners named in the complaint would testify regarding the markers that Kurry Jensen could readily see and that the Hansens were planning to rely on these owners to testify that there was mutual acquiescence to those markers. Thus, based on these facts, the court, in the sound exercise of its discretion, found the Hansens' discovery violation to be harmless. While some members of this panel would apparently have ruled otherwise, it cannot be said that there was no reasonable basis for this decision.[9]

---

9. Although the court concluded that Jensen was not harmed by the belated disclosures, it offered Jensen the opportunity to re-open discovery having recognized that Jensen may not have taken depositions because of the lack of disclosures. Jensen argues that "[t]he harm caused by the failure to disclose cannot be cured by simply restarting the case and re-doing fact discovery" because they incurred "fees and costs to litigate

(continued…)

III. Boundary by Acquiescence

¶28 Jensen does not challenge the district court's ruling that the Hansens proved their boundary by acquiescence claim regarding the front of the property, namely from the Hansens' garage to the street. But with respect to the Hansens' claim regarding the boundary from the garage to the back of the property,[10] Jensen asserts that the court erred in ruling that the Hansens proved their claim by clear and convincing evidence.

¶29 The boundary by acquiescence doctrine encompasses four elements:

> (1) a visible line marked by monuments, fences, buildings, or natural features treated as a boundary; (2) the claimant's occupation of his or her property up to the visible line such that it

---

(…continued)

motions that were filed as a direct result of the disclosing party's discovery violations." But because Jensen did not make this distinct argument before the district court, they have not preserved it for appeal, *see Columbia HCA v. Labor Comm'n*, 2011 UT App 210, ¶ 6, 258 P.3d 640 ("Utah law requires parties to preserve arguments for appellate review by raising them first in the forum below."), and because they have not argued an exception to the preservation requirement, we decline to address this argument.

10. Even though Jensen does not challenge the district court's ruling regarding the boundary in the front of the properties, we still recite and rely on the evidence of the markers on that portion of the property because it is directly in line, for all practical purposes, with the markers in the back of the property, providing further evidence of the owners' intent and the location of the line for the entire boundary.

would give a reasonable landowner notice that the claimant is using the line as a boundary; (3) mutual acquiescence in the line as a boundary by adjoining landowners; (4) for a period of at least 20 years.

*Anderson v. Fautin*, 2016 UT 22, ¶ 31, 379 P.3d 1186. "To prevail on a claim of boundary by acquiescence, a claimant must prove each element 'by clear and convincing evidence.'" *Linebaugh v. Gibson*, 2020 UT App 108, ¶ 25, 471 P.3d 835 (quoting *Essential Botanical Farms, LC v. Kay*, 2011 UT 71, ¶ 34, 270 P.3d 430).

¶30    Here, there is no dispute that the 20-year period has been met, and Jensen does not challenge any of the district court's findings regarding the second element of occupation. Thus, we analyze only the first and third elements, i.e., whether there were sufficient markers to delineate the boundary and whether there was mutual acquiescence to that boundary.

A.    Markers

¶31    At trial, the Hansens presented evidence—determined by the district court to have satisfied the clear and convincing standard—of "a visible line marked by monuments, fences, buildings, or natural features" along the claimed boundary line. *See Fautin*, 2016 UT 22, ¶ 31. Beginning from the front of the properties and proceeding to the back, there is a stump where once stood a tree that the Mottes, while owners of the Jensen property, required the Carters, then the owners of the Hansen property, to remove; a carport; a chain link fence to the west of the carport; a garage; a shed; remnants of fences that Jensen removed; and a rodeo arena. In addition to these markers, there is a noticeable elevation difference in the back portion of the property, consistent with a fence having long been in place and then removed, delineating a boundary that is roughly in line with the other markers along the claimed boundary line. All these markers created a clearly visible line approximately ten feet west of the deeded boundary line that the property owners

could acquiesce to as the boundary for the properties, and we thus conclude that there was clear and convincing evidence supporting the court's finding on the marker element. We next consider the court's finding that the property owners actually did so acquiesce.

B.      Mutual Acquiescence

¶32     Landowners acquiesce to a boundary when they "recognize and treat an observable line, such as a fence, as the boundary dividing the owner's property from the adjacent landowner's property." *RHN Corp. v. Veibell*, 2004 UT 60, ¶ 24, 96 P.3d 935 (quotation simplified). Acquiescence "may be tacit and inferred from evidence, i.e., the landowner's actions with respect to a particular line may evidence the landowner impliedly consents, or acquiesces, in that line as the demarcation between the properties," *id.* (quotation simplified), and it "is an objective determination based solely on the parties' actions in relation to each other and to the line serving as the boundary," *Essential Botanical Farms*, 2011 UT 71, ¶ 27. It "may be shown by silence, or through failure by the record title owner to suggest or imply that the dividing line between the properties is not in the proper location." *Id.* (quotation simplified). *See Fautin*, 2016 UT 22, ¶ 21 ("[T]he mutual acquiescence element merely requires silence or indolence by a nonclaimant[.]").

¶33     "On the other hand, nonacquiescence in a boundary would be signaled where a landowner notifies the adjoining landowner of her disagreement over the boundary, or otherwise *takes action* inconsistent with recognition of a given line as the boundary." *Essential Botanical Farms*, 2011 UT 71, ¶ 27 (emphasis in original) (quotation otherwise simplified). "Ultimately, 'a party's subjective intent has no bearing on the existence of mutual acquiescence' because such acquiescence 'is based on the objective behavior of the adjacent landowners regardless of their subjective intent to act in such a manner.'" *Linebaugh*, 2020 UT App 108, ¶ 27 (quoting *Essential Botanical Farms*, 2011 UT 71,

¶ 27). "A party's subjective belief will be considered evidence of mutual acquiescence only 'to the extent that such understanding is based on the objective actions of the landowners.'" *Id.* (quoting *Essential Botanical Farms*, 2011 UT 71, ¶ 28).

¶34 Jensen contends that the district court erred in determining that the Hansens proved mutual acquiescence by the Mottes and the Carters to the claimed boundary line. Specifically, Jensen asserts that the court erred because Flora "unequivocally testified that she did not treat any particular marker as a boundary" and because Victoria's "testimony was devoid of any specific conduct showing mutual acquiescence." Jensen is mistaken.

¶35 Although the Mottes testified that they treated the deeded property line as the boundary—questionable testimony, given that the district court characterized it as incredible, *see supra* ¶ 15—the facts on the ground combined with Victoria's testimony provided the court with clear and convincing evidence that the Mottes, as owners of the Jensen property, and the Carters, as owners of the Hansen property, mutually acquiesced to the claimed boundary line. Specifically, the Mottes required the Carters to remove a tree that was, in fact, on the Mottes' deeded property, and they never objected to the Carters erecting the carport, chain link fence, or garage within the approximate ten-foot area between the deeded line and the claimed boundary line. The Mottes also did not object to the rodeo corral in the back of the property that extended over the deeded boundary and was in line with the markers in the front of the property. This provided clear evidence that the Mottes treated the acquiesced-to line in the front of the property as the boundary, which Jensen does not contest on appeal, and that they also treated this line as extending through the back of the property.

¶36 Furthermore, Victoria testified that all the previous owners treated the claimed boundary line as the boundary

between their properties. The markers along that line, and the elevation discrepancy between the properties along that line, supported her testimony. Jensen contends that Flora's testimony is dispositive because she claimed they did not treat all these markers as the boundary. But the court expressly discredited Flora's testimony because it was inconsistent with the facts on the ground, and Jensen has not shown how this finding is clearly erroneous. *See generally* Utah R. Civ. P. 52(a)(4) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the credibility of the witnesses.").

¶37     Thus, based on Victoria's credible testimony, combined with the facts on the ground, the court did not err in finding, by clear and convincing evidence, that the Mottes and Carters mutually acquiesced to the claimed boundary line. All the markers were consistently in line with one another along the claimed boundary line, and the Mottes did not at any time, through their objective actions, "suggest or imply that the dividing line between the properties" was not the claimed boundary line. *See Essential Botanical Farms*, 2011 UT 71, ¶ 27 (quotation simplified). *See also Ault v. Holden*, 2002 UT 33, ¶ 20, 44 P.3d 781 (holding that property owners must "take some action manifesting that they do not acquiesce or recognize the particular line, e.g., a fence, as a boundary between the properties").

¶38     Finally, Jensen contends that the district court erred "because it did not consider the purpose of the alleged boundary markers." While the purpose of a particular boundary marker may be taken into consideration, it is not dispositive in this analysis, and a court is not required to take it into consideration when the *objective* facts on the ground indicate that the markers acted as a boundary regardless of the reason for their initial installation. *See Linebaugh*, 2020 UT App 108, ¶ 28 ("[T]he fact that a fence is built with the initial objective of containing

animals—as opposed to where such a fence is built and how the parties thereafter regard it—is not dispositive."). The district court could reasonably disregard the subjective reasons behind the genesis of certain markers because the objective facts, coupled with Victoria's credible testimony, overcame the significance of any subjective purpose for the creation of those markers.

CONCLUSION

¶39    We decline to review the district court's rulings on Jensen's summary judgment motions because the court denied the motions on the basis that disputes of material fact existed and a trial was subsequently held in which those facts were definitively resolved. Furthermore, Jensen has not shown an abuse of the court's discretion in determining that the Hansens' failure to serve initial disclosures in a timely manner was harmless. Finally, given its findings, the court was correct in ruling that the boundary between the Hansen property and the Jensen property was approximately ten feet west of the deeded boundary, as all the elements of boundary by acquiescence were met.

¶40    Affirmed.    _____

MORTENSEN, Judge (concurring):

¶41    I concur in sections I and III of the lead opinion, and I concur in the result of section II. So that the precedential import of this case is not misperceived, I write separately to emphasize that had the district court excluded all the Hansens' evidence and witnesses I would have likely voted to affirm in a heartbeat. I also write separately to clarify that, apart from the result reached by the lead opinion, I do not share the views, nor support the implication of the analysis, in section II. And finally, I write separately because I think we must harmonize the result

reached here with our recent decision in *Segota v. Young 180 Co.*, 2020 UT App 105, 470 P.3d 479.

¶42   When a party blows off rule 26's initial disclosure requirements in their entirety, that party should not be surprised when its evidence or witnesses are excluded. With that said, I am resigned to concur in the result here because we review the decision at issue for an abuse of discretion, giving the district court substantial deference. And here, the district court made specific findings regarding harm and prejudice with which I do not think Jensen has engaged—specifically the district court's determination that the failure to file initial disclosures was harmless.

¶43   Jensen fails to appreciate how the district court actually ruled in this case. The district court first ruled that the failure to file initial disclosures under the particular facts of this case was harmless. *After* making that ruling and denying the relief Jensen sought, the district court also (1) required the Hansens to file the missing initial disclosures and (2) allowed for discovery to be conducted in light of those disclosures. And while Jensen assails the district court for what Jensen characterizes as an attempt to blunt any harm the failure to disclose caused, *see supra* note 9, Jensen's principal brief does not engage with the district court's reasoning as to why and how the Hansens' failure to file initial disclosures was harmless. I would end the analysis there. With some frequency we have affirmed the ruling of the court below when an appellant fails to address the basis of the lower court's ruling. *See Golden Meadows Props., LC v. Strand*, 2010 UT App 257, ¶ 17, 241 P.3d 375 ("Because [the appellant] fails to address the basis of the district court's ruling, we reject this challenge."); *see also Cattani v. Drake*, 2018 UT App 77, ¶ 52, 424 P.3d 1131; *Gillett v. Brown*, 2017 UT App 19, ¶ 38, 391 P.3d 1055; *Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 23, 379 P.3d 18; *Wing v. Still Standing Stable LLC*, 2016 UT App 229, ¶ 21, 387 P.3d 605. Rule 26(d)(4) expressly provides that a district court need not exclude evidence or witnesses when disclosures have not been

made if that failure is "harmless" or "good cause" is shown. Here, the district court specifically made a determination that the failure to file initial disclosures was harmless. And Jensen's lone argument that any failure to file initial disclosures automatically mandates exclusion of evidence and witnesses thus fails to address the basis of the district court's ruling.[11]

¶44   But I am particularly troubled by what the lead opinion seems to consider sufficient to support a finding of harmlessness, a point on which I think we need not opine. While acknowledging that the Hansens' verified complaint did not satisfy rule 26(a)(1), the lead opinion concludes that the complaint put Jensen on notice of who would be testifying and what the general nature of their testimony would be. That might be, and if all reliance were placed on a complaint that contained all the information required by rule 26(a)(1)—only failing to be formally denominated as a disclosure—a determination of harmlessness might be sustainable. But then the lead opinion goes further, concluding that Jensen was required to compare this admittedly deficient disclosure with Jensen's presumed knowledge of the underpinning facts, which leads to a conclusion of harmlessness because Jensen knew what evidence

---

11. Jensen mainly argues that the failure to file initial disclosures automatically results in exclusion of evidence and/or witnesses; this is consistent with Jensen's arguments below. However, Jensen also contends that it suffered harm by "incur[ing] attorney's fees in connection with the First Motion for Summary Judgment and the Motion in Limine in reliance on . . . their failure." But, so far as we can decipher, Jensen did not claim it had suffered harm before the district court. As a result, this issue is not properly before us on appeal. *See Phillips v. Skabelund*, 2021 UT App 2, ¶ 15 n.5, 482 P.3d 237.

was going to be used by the Hansens at trial and who was going to offer the relevant testimony. *See supra* ¶¶ 26, 27. That is a bridge too far for me.[12] This seems to invite a party to claim harmlessness if it can argue any logical basis, no matter how

12. The lead opinion's approach is sensible, and is often used, where the litigant provides *deficient* initial disclosures and the parties have otherwise exchanged significant discovery. A litigant who actively participates in discovery should be able to demonstrate harmlessness by showing that, despite failing to disclose a particular witness in its initial disclosures, the opposing party was aware that the witness at least had discoverable information because it was mentioned in depositions, interrogatories, etc. But where initial disclosures were not provided at all, the lead opinion's approach is untenable: it shifts an unacceptable burden on the opposing party to closely parse the pleadings and discovery exchanged (if any) to decrypt which individuals even have discoverable information. *See Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) ("An adverse party should not have to guess which undisclosed witnesses may be called to testify."); *Saudi v. Valmet-Appleton, Inc.*, 219 F.R.D. 128, 134 (E.D. Wis. 2003) ("The importance of lay and expert witness disclosures and the harms resulting from a failure to disclose need little elaboration. When one party does not disclose, the responding party cannot conduct necessary discovery, or prepare to respond to witnesses that have not been disclosed, and for whom expert reports have not been provided."). And even in cases that do not involve "complicated" factual disputes, *see supra* ¶ 27, this burden may still be significant. As just one example, witnesses known to the opposing party may nevertheless speak to other individuals (unknown to the opposing party) about the operative facts of the case. These individuals would thus, unbeknownst to the opposing party, have discoverable information and might even be crucial witnesses.

attenuated, to conclude that the opposing party should have been able to cobble together a prescient picture of the potential evidence or witnesses. For me, this is a result the 2011 amendments to rule 26 were specifically designed to avoid. *See* Utah R. Civ. P. 26 advisory committee's notes to 2011 amendment (explaining that the initial disclosure requirements are "meaningful" and should be interpreted and applied so as to prevent "sandbagging" the opposing party).

¶45 Moreover, I think it especially important to harmonize what we have determined, in this case, falls within a district court's discretion, and our decision in *Segota*, where we sustained another court's decision to bar all documents and witnesses because the plaintiff failed to provide timely initial disclosures. *See* 2020 UT App 105, ¶¶ 21–23. As in this case, the plaintiff in *Segota* did not provide initial disclosures until after discovery had closed, *id.* ¶ 6, and she argued that her failure to provide timely initial disclosures was harmless because the defendants had actual knowledge of the information needed—evidenced by the fact that her belated initial disclosures were "identical" to the defendants', *id.* ¶ 21. But unlike in this case, and crucially so, the district court in *Segota* made a specific finding of harm and accordingly sanctioned the plaintiff under rule 26(d)(4). *Id.* ¶ 19.

¶46 We determined that the district court in *Segota*, for several reasons, did not abuse its discretion. First, we held that actual notice of witnesses and documents that might eventually be used did not preclude the district court from finding that the defendants were harmed. To this point, we specifically explained that "[o]ne party's ability to 'guess at' what the other party's disclosures might be, had they been timely made, does not relieve the other party from its obligation to definitively inform her litigation opponent, through disclosures, about the witnesses and documents she plans to use to prove her case." *Id.* ¶ 21 (quoting *Keystone Ins. Agency v. Inside Ins.*, 2019 UT 20, ¶ 20, 445 P.3d 434). Second, we identified harm in the fact that, by not

providing initial disclosures until after discovery had closed, the defendants had lost "their opportunity to conduct meaningful fact discovery." *Id.* Third, we identified harm in the delays and costs caused by the belated disclosures that the defendants had "no role in creating," yet had to bear. *Id.* ¶ 22. And had the district court in this case made any similar findings of harm and accordingly excluded evidence under rule 26(d)(4), I have little doubt that I would vote to affirm.

¶47    The result we reach here should thus not be understood to change *Segota*'s holding. Both cases involve our review of a discretionary judgment call under a necessarily deferential standard. Therefore, both cases stand for the same general proposition: a truly close call that could go either way—which the district court here characterized as "razor thin"—will likely be sustained. In one case—*Segota*—the district court made a determination that neither harmlessness nor good cause could be shown, and as a result, excluded the plaintiff's evidence and witnesses as directed by rule 26(d)(4). *Id.* ¶ 19. In the second case—this case—the district court made a determination of harmlessness and accordingly declined to impose sanctions under rule 26(d)(4).

¶48    In *RJW Media Inc. v. Heath*, 2017 UT App 34, 392 P.3d 956, we warned litigants about the need for proper and complete disclosures, albeit in the specific context of expert disclosures, but the substance of the warning is equally salient for initial disclosures:

> The requirement to provide a summary of expected testimony is not merely a matter of form. Disclosure of specific facts and opinions is required so that parties can make better informed choices about the discovery they want to undertake or, just as important, what discovery they want to forgo. More complete disclosures serve the beneficial purpose of sometimes giving the opposing party

> the confidence to not engage in further discovery. But this is only true if the potential for surprise is reduced by at least minimum compliance with the rule 26 disclosure requirements.

*Id.* ¶ 25. And we categorically rejected the idea that an adverse party is under any obligation to point out deficiencies in an adverse party's disclosures. *Id.* ¶ 29. We explained:

> [W]here a party desires to use a witness or a document, and where that party's disclosure is inadequate, the opposing party remains under no obligation to bring the issue to a head. An insufficient disclosure by one party does not shift the burden and risk to resolve the insufficient disclosure to the other party, who now must either seek court intervention or waive objections to the sufficiency of the disclosure. Such an approach would undermine the purpose of the rule, which ultimately is to encourage open disclosures without a formal discovery request, and would encourage scant disclosures at the outset in hopes that the opposing party will not seek to compel more.

*Id.* We further explained:

> Instead, the rules embrace the idea of competing risks. A disclosing party who endeavors, by stratagem or otherwise, to disclose as little as possible faces a significant risk that the disclosure will be found insufficient and the evidence or the witness may not be allowed. *See* Utah R. Civ. P. 26(d)(4) (exclusion of witness or exhibit is the presumed sanction). To minimize this risk, disclosing parties should be liberally forthcoming rather than minimally compliant and risk the

> possible consequences of testimony exclusion. Likewise, where the sponsoring party under-discloses, the receiving party may object and attempt to compel further disclosure. *See id.* R. 26(b)(3), 37(a)(1)(A). And while there is no penalty in the rule for failing to do so, the receiving party does take the risk that a trial court may ultimately find the disclosure sufficient, as occurred here.

*RJW Media Inc.*, 2017 UT App 34, ¶ 30 (cleaned up). Implicit in all of this is that neither the district court in this case, nor any district court, is *required* by the rules to make any attempt to ameliorate or blunt the resultant prejudice which occurs when a party ignores disclosure requirements. No disclosure requirement, and certainly not an initial disclosure requirement, should come as a surprise to any party.

¶49    In sum, and as a forewarning to all litigants who are tempted to play fast and loose with our discovery rules: the Hansens risked it all when they failed to file initial disclosures. That the gambit did not result in disaster should offer no solace or refuge to future parties who undertake the same risk.

———————

APPENDIX

