2026 UT App 39

## THE UTAH COURT OF APPEALS

LEONA MARIA PRISBREY,
Appellee,
*v.*
KENT TERRY PRISBREY,
Appellant.

Opinion
No. 20250070-CA
Filed March 19, 2026

Fifth District Court, St. George Department
The Honorable Keith C. Barnes
No. 234500039

Terry L. Hutchinson and Daniel J. Tobler,
Attorneys for Appellant

David W. Read, Attorney for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and AMY J. OLIVER concurred.

MORTENSEN, Judge:

¶1     This appeal arises out of a divorce trial between Leona
Maria Prisbrey and Kent Terry Prisbrey. Leona never filed initial
disclosures, even when reminded by Kent and the district court.[1]
Three weeks before trial, Leona finally submitted disclosures, but
by this time, the original discovery period and an extension
period of discovery had both expired, leaving no opportunity for
any discovery. Kent objected to the disclosures and moved the
court to exclude all of Leona's evidence. The district court
deferred the decision to the morning of trial, where the court

---

1. Because the parties share a common surname, we refer to them
by their given names, with no disrespect intended by the apparent
informality.

overruled the objection, allowed the evidence, and then relied on the late-disclosed evidence to rule against Kent. Kent now appeals, claiming that the district court exceeded its discretion in overruling the objection and allowing the evidence to be used at trial. We agree with Kent's argument, vacate the judgment of the district court, and remand the case for a new trial to be conducted with the evidence excluded.

BACKGROUND

¶2 Leona and Kent married in Australia in 2014, and they subsequently moved to Leeds, Utah, to live in a house owned by Kent (the Leeds Property). The two separated in 2022 and separately petitioned for divorce in January 2023. The cases were later consolidated.

¶3 Kent filed his answer to Leona's petition on February 8, 2023, and he submitted his initial disclosures in December 2023. Leona failed to file any initial disclosures. She did, however, move to reopen discovery on October 18, 2023—a request that the district court granted, allowing discovery to be conducted until February 28, 2024.

¶4 At a conference on April 26, 2024, Kent, who was acting pro se at the time, notified the court that he had asked Leona to provide initial disclosures and financial statements but had received none. He said he had been assured by Leona's counsel that those items would be produced in discovery "soon," but he still had not received anything as of the date of the conference. Leona's counsel acknowledged that "discovery [was] over" and the "case [was] ripe to move forward for trial." The court asked Leona's counsel if initial disclosures and discovery had been provided, and counsel stated that he was "not prepared to speak to that" at the time. The court responded, "Isn't that kind of a pretty basic question . . . ? Have you provided . . . the initial discovery . . . or not? It's either yes or no. I think you would know

that." Counsel agreed it was a simple question and said that he would "comply with" the disclosure requirements set by rule 26 of the Utah Rules of Civil Procedure.[2] The court then set the matter for a pretrial conference on May 7.

¶5    At that pretrial conference, Leona's counsel stated that he would like to set a date for trial. Kent, now represented by counsel, informed the court that he still had not received initial disclosures or a response to his discovery requests. Kent's counsel expressed concern about setting the matter for trial in the absence of disclosures and responses to repeated discovery requests. He further asked that "anything [Kent has] requested [but not received] be excluded." Kent's counsel assured the court that he could not find "any certificates of service" indicating that disclosure had been made. More specifically, he stated, "My client says he has not received anything, and so my request was going to be that we might need some more time before setting it for trial to clean this up, get that information, and then proceed." The court continued the matter until May 28.

¶6    At the pretrial conference on May 28, Leona's counsel conceded that initial disclosures had still not yet been provided to Kent, but he represented that "a financial declaration" would be forthcoming. He did say that there was "one home at issue" and "any documents" related to it were "in the possession" of Kent. But Kent's counsel told the court that it was "not just the financial declaration" that was missing but "the full initial disclosure" was also lacking. The court set the trial date for September 23 and indicated that the disclosure issue would be addressed at that time.

---

2. Of course, by that time compliance with rule 26 was impossible as the time period for disclosure had passed and discovery had closed. *See* Utah R. Civ. P. 26(a), (c) (setting out timing for initial disclosures and discovery).

¶7 Less than three weeks prior to trial, on September 3, Leona finally provided initial disclosures to Kent. On September 9, Kent asked that the belatedly disclosed evidence be excluded from trial as untimely under rule 26(d)(4) of the Utah Rules of Civil Procedure. He argued that Leona disclosed six witnesses and sixty-five exhibits, noting that her disclosure "was the first time, ever, that [she] provided these exhibits or anything related to these exhibits, or named any of these witnesses."

¶8 Leona responded to the objection, arguing that the "vast majority" of the exhibits she disclosed should have been disclosed by Kent; that Kent was familiar with or had in his control the documents, financial records, and materials she disclosed; and that Kent had not fully complied with his discovery obligations. She further asserted that she had "good cause" for the late disclosure because the exhibits were "integral to resolving issues that [Kent] failed to adequately address in his disclosures." And she claimed that the late disclosure was "harmless" because Kent was aware of or had in his possession "many" of the "financial records, communication logs, and property documents" she had disclosed.

¶9 The district court addressed Kent's objection and motion to exclude on the first day of the trial. Leona's counsel explained that Leona had "received so little" in the way of disclosure from Kent that if her late-disclosed documents were not "allowed as pretrial disclosures," then the case could not move forward because there was "so little disclosed." Kent's counsel responded,

> [O]ne of the bigger issues is going to be [the Leeds Property] and how much money was put into the home by both parties during their marriage. That's . . . the biggest issue that we have to address, and we didn't receive any information regarding that up until a couple of weeks ago.

So whatever [Leona] is claiming that she has put into the property, we have . . . no idea if that's accurate. She's provided a very simple sheet stating what she's put into it. This is information that should have been disclosed much earlier in this proceeding. [Kent] was quite diligent in requesting it, filed the discovery request, served that on [Leona]. We brought it up more than once, and now here we are.

We have that information now, very vague, but again, like I say, the issue is, [Kent] hasn't had a chance to explore that further, or even try to find out whether it's true or not. That's the bigger issue.

¶10 Leona's counsel replied, "If the [Leeds Property] is the core of the issue, we received nothing from [Kent]. We are providing information that he should have provided but failed to do." To this, Kent's counsel retorted,

[Kent's] position is, it's his home, it's been his home, there was nothing for him to disclose. That it's true, both parties contributed some while they lived there, but there would be really not much more than what two people would contribute while they lived in a home. So it's not an issue where somebody provided so much money or a substantial amount to where she should have an equitable interest in the property. So from [Kent's] perspective, there was nothing to disclose further than just that it has been his premarital property.

Leona's counsel reiterated that since the "core issue" was the Leeds Property, she should be allowed to proceed with all the documents in her late disclosure.

¶11 The court overruled Kent's objection to the late disclosure and denied his motion to exclude the evidence. The court observed that it didn't see "any kind of surprise" to Kent given his position that the Leeds Property belonged to him. Accordingly, the court said, "[F]or now, I'm going to allow counsel from each side to present what evidence they feel to be relevant to the finder of fact, myself."

¶12 In its findings of fact and conclusions of law, the district court determined that the Leeds Property was marital property because Leona had "contributed more than $187,000 of her money to [its] renovation, construction, and maintenance." It made this determination "based on extensive and detailed bank records," apparently those contained in the disclosures she provided to Kent for the first and only time three weeks before trial.

ISSUE AND STANDARDS OF REVIEW

¶13 Kent appeals, arguing that the district court erred in allowing Leona to introduce evidence that was not timely disclosed as required by rule 26 of the Utah Rules of Civil Procedure. "We review a district court's interpretation of our rules of civil procedure, precedent, and common law for correctness. But in reviewing a district court's determination with respect to harmlessness and good cause, our review is necessarily deferential. This is because a court's decision in discovery matters is a discretionary call, and we will affirm such decisions when the court's discretion was not abused, even if we or another court might have made a different decision in the first instance." *Hansen v. Kurry Jensen Props. LLC*, 2021 UT App 54, ¶ 19, 493 P.3d 1131 (cleaned up); *see also Lunt v. Lunt*, 2024 UT App 148, ¶ 27, 559 P.3d 73 ("A court abuses its discretion only if no reasonable person

would take the view adopted by the trial court." (cleaned up)), *cert. denied*, 564 P.3d 958 (Utah 2025).[3]

ANALYSIS

¶14   As relevant here, rule 26 of the Utah Rules of Civil Procedure requires a party, "without waiting for a discovery request," to serve on the other party "the name and, if known, the address and telephone number of . . . each individual likely to have discoverable information supporting its claims or defenses, unless solely for impeachment, . . . and . . . each fact witness the party may call in its case-in-chief and, except for an adverse party, a summary of the expected testimony." Utah R. Civ. P. 26(a)(1)(A)(i)–(ii). The rule also requires the initial disclosures to include "a copy of all documents, data compilations, electronically stored information, and tangible things in the possession or control of the party that the party may offer in its case-in-chief." *Id.* R. 26(a)(1)(B). This disclosure must be made by a plaintiff "within 14 days after the [defendant's] filing of the first answer to that plaintiff's complaint." *Id.* R. 26(a)(2)(A).

¶15   The sanction for failing to timely provide initial disclosures is severe. The associated evidence is barred from admission at trial unless the district court finds the failure to be harmless or justified by good cause. *See id.* R. 26(d)(4) ("If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document, or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure."). *See generally Keystone Ins. Agency v. Inside Ins.*, 2019 UT 20, ¶ 18 n.7, 445 P.3d 434 ("Under a plain language reading of rule 26(d)(4), the burden to

---

3. Kent identifies two other issues on appeal, but they both implicate the single issue articulated above.

demonstrate harmlessness or good cause is clearly on the party seeking relief from disclosure requirements . . . .").

¶16 Establishing that the defective disclosures were "harmless" requires more from a party than simply showing "any logical basis, no matter how attenuated, to conclude that the opposing party should have been able to cobble together a prescient picture of the potential evidence or witnesses." *Hansen v. Kurry Jensen Props. LLC*, 2021 UT App 54, ¶ 44, 493 P.3d 1131 (Mortensen, J., concurring, joined by Pohlman, J.). In other words, a defective disclosure cannot be considered harmless just because the other party *ought* to have known that the undisclosed evidence would be used. And showing "good cause," under the plain language of rule 26, requires the party to show why the failure to adequately disclose was justified. Utah R. Civ. P. 26(d)(4). Thus, "good cause" has to mean something more than that the party needs the deficiently disclosed information to make its case. Showing good cause requires, at the very least, a party to demonstrate justification for not disclosing information that it should have been able to disclose. *Cf. Keystone*, 2019 UT 20, ¶ 17 ("Regardless of what Keystone knew or did not know about its damages, it was still incumbent on Keystone to disclose what it had and, more crucially, its method and computation for damages.").

¶17 Here, there is no question that Leona was not timely in her initial disclosures. The initial disclosures were due in February 2023. And Kent reminded Leona on multiple occasions that they had not been made, even long after the deadline had passed. The district court—at Leona's request—reopened discovery and set a deadline of February 28, 2024, for the parties to make disclosures. But even then, Leona did not make her disclosures. Indeed, she did not submit her initial disclosures until September 3, 2024—just twenty days before the trial and over six months after the disclosures were due pursuant to the extended deadline set by the court.

¶18 Leona did not demonstrate harmlessness or good cause to excuse her late disclosures. Nor did the court rule that the late disclosures were harmless or that her failure was justified by good cause.[4]

¶19 Leona has not attempted to argue on appeal that there was good cause for her late disclosures. She did assert below that she had shown good cause because the late-disclosed material was "integral to resolving issues that [Kent] failed to adequately address in his disclosures." But just because a party needs late-disclosed material to resolve a case, it does not follow that the party can demonstrate good cause on that basis alone. If this were the standard for showing good cause, rule 26's timing requirements would be meaningless because a party could simply assert any evidence should be admitted on the basis of need. Instead of good cause being based on the late-disclosing party's need for the material, good cause must be related to the reason that the late disclosure happened. As rule 26 explicitly states, a party is not allowed to use late-disclosed materials unless "the party shows good cause *for the failure*," not by showing a reason the material is needed. *See* Utah R. Civ. P. 26(d)(4) (emphasis added). In other words, good cause for the failure to disclose has nothing to do with having a good reason to need the material in question.

¶20 Leona implies that her lack of compliance with disclosure requirements was due to Kent's own lack of disclosure. But Kent had made his disclosures, and Leona has not pointed to anything in the record to show that they fell short. And he claimed he had nothing he needed to disclose relative to the Leeds Property—

---

4. While the district court stated that it did not see "any kind of surprise" to Kent in the late disclosures, it did not specifically address whether the late disclosures were harmless. And the district court made no finding that even remotely touched on good cause.

meaning that he was ready to proceed based on what he had disclosed. Moreover, rule 26 clearly prohibits one party pointing to another party's alleged failure to comply with disclosure requirements to justify its own failure. *See* Utah R. Civ. P. 26(d)(3) ("A party is not excused from making disclosures or responses because the party has not completed investigating the case, the party challenges the sufficiency of another party's disclosures or responses, or another party has not made disclosures or responses."). Accordingly, the rationale of Leona's argument (namely, blaming Kent) is expressly foreclosed by the plain language of the rule.

¶21    Leona does argue that the late disclosures were harmless to Kent because the material in question did not affect the outcome of the trial, asserting that the "bank records were merely cumulative of other evidence confirming that both parties contributed labor and funds to the [Leeds Property's] improvement." This argument falls flat for at least two reasons. First, Leona's appellate brief wholly fails to identify what this other evidence was. Second, and more importantly, the district court's findings of fact belie this conclusion. The court specifically found, "based on extensive and detailed bank records, that [Leona] contributed more than $187,000 of her money to the renovation, construction, and maintenance" of the Leeds Property. This leads to but one conclusion in a prejudice analysis: Leona was successful in her claim that the Leeds Property was marital property largely because of the court's reliance on the late-disclosed bank records. We simply do not see how Kent was not harmed by Leona's noncompliance with rule 26 given this unequivocal statement of fact from the court.

¶22    Leona also suggests that Kent's lack of surprise regarding the substance of the undisclosed material shows that no prejudice flowed from the late disclosures. We are not persuaded. This rationale would lead to the conclusion that it is always harmless to forgo initial disclosures if the opposing party would not be

surprised by the material disclosed. This thinking misses the mark. First, noncompliance with disclosure requirements until three weeks before trial obviously means that the other party—whether surprised or not—cannot conduct any discovery in response. *See Hansen*, 2021 UT App 54, ¶ 46 (Mortensen, J., concurring, joined by Pohlman, J.) ("By [the plaintiff] not providing initial disclosures until after discovery had closed, the defendants had lost their opportunity to conduct meaningful fact discovery." (cleaned up)). Moreover, it's not an opposing party's lack of surprise that makes late-disclosed material harmless. Rather, it's the material being used to build a late-disclosing party's case that makes it harmful. "A party may well know the content" of the late-disclosed material so as not to be surprised by it, but the fact that the material will be used "by the other side in the other side's case-in-chief undoubtedly" will come as a surprise because its content "will dictate how" a party prepares to defend at trial. *See Johansen v. Johansen*, 2021 UT App 130, ¶ 19, 504 P.3d 152. As we have repeatedly explained,

> The requirement to provide a summary of expected testimony is not merely a matter of form. Disclosure of specific facts . . . is required so that parties can make better informed choices about the discovery they want to undertake or, just as important, what discovery they want to forgo. More complete disclosures serve the beneficial purpose of sometimes giving the opposing party the confidence to not engage in further discovery. But this is only true if the potential for surprise is reduced by at least minimum compliance with the rule 26 disclosure requirements.

*RJW Media Inc. v. Heath*, 2017 UT App 34, ¶ 25, 392 P.3d 956. By blowing off disclosure requirements until it was too late in the game to be of any benefit to Kent, Leona harmed Kent by denying him the opportunity to conduct discovery in an informed manner.

¶23 Leona further argues that "[e]ven if disclosure was technically late," the district court properly admitted the financial records identified in her late disclosures as "impeachment evidence."[5] She bases this assertion on Kent's alleged testimony that she "contributed 'zero' dollars toward improvements on the Leeds Property." Leona argues that her "bank statements [identified in her late disclosures] did not introduce a new theory or previously undisclosed claim," but they "simply demonstrated that [she] made purchases—such as 'wood for pond' and 'cement for walkway'—contradicting [Kent's] categorical claim that she made no contributions." She asserts that the "trial court specifically found that these statements were used to test [Kent's] credibility, not to expand [her] affirmative case." Leona would have a good point if the claims supporting her impeachment argument were true. Unfortunately for her, she has not pointed out where in the record Kent allegedly stated that she contributed nothing toward the improvement of the Leeds Property or where the district court found that such an assertion by Kent supported the admission of impeachment evidence. Appellate advocacy requires "attentiveness to presenting a clear picture of facts and argument to [the reviewing] court, which, of course, does not have the benefit of having previously reviewed the evidence. In particular, appellate advocates must never assume that it is [the] court's burden to comb the record for evidence supporting poorly framed arguments. We have stated this principle on multiple occasions." *Tanner v. Carter*, 2001 UT 18, ¶ 19, 20 P.3d 332. Though it is not our responsibility to comb the record, we nevertheless diligently verify the accuracy of assertions made in briefing,

---

5. By no standard can it be said that initial disclosures being made eighteen months late and less than three weeks before trial is a mere "technicality." Rather, such tardiness represents a fundamental disregard for the applicable rules and for conducting a trial fairly.

especially when they are front and center in the controversy.[6] We can find no place in the record where the court admitted the

---

6. It should come as no surprise that in rendering a decision, appellate judges, assisted by their law clerks, carefully read the briefs to verify the accuracy of the propositions asserted, the sources cited, and the representation of the record. Leona's brief on appeal has fallen far short of our reasonable expectations. We note the following shortcomings as especially troubling:

(1) Leona's counsel has not provided a single citation to the record in Leona's brief on appeal. And counsel makes some assertions about what happened at trial that, if true, would have had a substantive impact on our analysis and the outcome. Without record citations, we don't even have the benefit of knowing which page in the record is being referred to. Still, we have taken the extra step of doing word searches to locate these phantom citations, but to no avail. As a result, the location of key information that Leona's counsel represents as being in the record remains a mystery to us.

(2) In the recitation of the standards of review, Leona's counsel cites five Utah cases a total of six times to support his propositions. Of these six citations, four are incorrect for various reasons (e.g., the cited material has nothing to do with the proposition for which the case is cited, the case name is incorrect, or the cited paragraph does not exist).

(3) In the argument section, which is just over four pages long, Leona's counsel cites four Utah cases a total of seven times. Only one citation is correct. The others are deficient in various ways (e.g., wrong case name, unrelated in any way to the asserted proposition, cited paragraph of the case does not exist, or misquoted the case). Indeed, some of the citations appear to be made out of whole cloth.

(continued…)

disputed evidence for impeachment purposes. And we have found nothing in the record to suggest that Kent ever stated that Leona contributed "zero" dollars to the Leeds Property. Indeed, the opposite is true. Kent stated that he thought Leona "probably put $30,000 into the home and into rebuilding everything." Accordingly, we are left to conclude that Leona's impeachment argument is simply without any foundation.

¶24   In sum, the district court exceeded its discretion in allowing Leona to present her late-disclosed evidence. To put it bluntly, "no reasonable person would take the view adopted" by the district court in overlooking the lateness of the disclosures. *See State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167 (cleaned up). And since the late disclosures prejudiced Kent and were not excused by good cause, we reverse the district court's determination that the Leeds Property was marital property and remand this matter for a new trial based on the evidence that was properly disclosed.

CONCLUSION

¶25   Given that Leona has not shown good cause for her late disclosure or that her violation of rule 26 was harmless, the district court exceeded its discretion in allowing the admission of Leona's late-disclosed evidence. We therefore vacate the resulting judgment and remand this matter for a new trial to be conducted without that evidence.

_____

We realize attorneys find themselves pulled in many directions, but even in the midst of these pressures, we do expect a modicum of compliance with briefing and citation standards. In a case like this, where any similarity between the citation in the brief and the material cited appears to be purely accidental, we are left perplexed as to what happened in the composition process.