2017 UT App 34

## THE UTAH COURT OF APPEALS

RJW MEDIA INC.,
Appellant,
*v.*
CHUCK HEATH,
Appellee.

Opinion
No. 20141082-CA
Filed February 24, 2017

Third District Court, Silver Summit Department
The Honorable Ryan M. Harris
No. 130500240

Michael D. Zimmerman, Erin Bergeson Hull, and
Sean N. Egan, Attorneys for Appellant

Alexander Dushku, Cameron M. Hancock, and Justin
W. Starr, Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES STEPHEN L. ROTH and KATE A. TOOMEY concurred.

MORTENSEN, Judge:

¶1     Chuck Heath built a house with a detached building. The detached building consists of a below-grade garage with an office on top. Heath's neighbor, RJW Media Inc. (RJW), sued to have the detached building torn down. Heath prevailed at a bench trial and RJW now seeks reversal. We affirm.

BACKGROUND

¶2     RJW owns property in Summit County in the Timbers Subdivision. Heath owns a lot in the Timbers Subdivision adjacent to the RJW property. Shortly after purchasing the lot in 2012, Heath began construction of a house. He originally

planned to build the house with an attached garage. However, finding that this plan would require uprooting a large tree, Heath decided to build a detached garage instead. The detached building, with the below-grade garage and office above, is identified on the building plans as a "carriage house."

¶3     The Covenants, Conditions & Restrictions (CC&Rs) governing the Timbers Subdivision restrict owners from building more than one residential structure per lot. The term "residence" is not defined in the CC&Rs, but the parties agree that, between the CC&Rs and the building codes in Summit County, a structure is residential if it is "designed and intended for use and occupancy as a residence" and if it is equipped for cooking, sleeping, and sanitation. Of all the criteria for determining whether a structure is residential, only the equipped-for-cooking criterion is relevant to this appeal. The carriage house did not contain the wiring and plumbing for a stove, but is equipped with 110-volt outlets and a microwave.

¶4     The CC&Rs require construction projects to be approved by the Timbers Subdivision's Home Owners Association (the HOA). Specifically, residents are to submit "complete plans" to the HOA for approval before construction may begin. The CC&Rs do not define the term "complete plans." Summit County also requires property owners to submit plans to approve building permits. Further, Heath needed Summit County's approval for a plat amendment on his property to resolve a ski easement. Heath prepared and submitted various plans to the HOA and to Summit County. The HOA ultimately approved the project. Heath also resolved the ski easement and received the needed permits from Summit County. Construction began on the Heath property shortly after all required permits and approvals were obtained.

¶5     RJW filed this action against Heath to enjoin the construction of the carriage house and to remove what had already been built. The trial court allowed Heath to complete construction but forbade him from building the carriage house

any higher or wider. The parties began making preparations for trial.

¶6 In July 2013, RJW deposed Michael Upwall, one of Heath's experts and the architect for Heath's house. Upwall testified,

> I believe the way the county defines accessory dwelling units is . . . cooking—so if you did a range that would require a 220 outlet or a gas line, you cannot have that. Could you put a microwave in there and pop popcorn? Yes. . . . But there is . . . no range, which would imply cooking.

¶7 In September 2013, Heath disclosed a list of ten non-retained expert witnesses who might be called to testify at trial. Sean Lewis, a county planner for Summit County, was included on this list.[1] The disclosure provided Lewis's name, title, and a generic description of the topics about which Lewis, along with the other nine witnesses, might testify. The description reads:

> [Heath] identif[ies] the following "non-retained" experts as they provided architectural, planning, construction and or design services for the Heath project. Additionally, these witnesses may be asked to provide specific architectural, design, construction, or general building opinions regarding the Heath project as well as opinions and facts regarding [RJW's] deck, thus these witnesses are therefore included in this designation.

¶8 Four days before trial, Heath filed and served a supplemental disclosure stating that Lewis would testify that

---

1. RJW also designated Lewis as a witness in its pretrial disclosures, including his contact information.

"under the Snyderville Basin Development Code and the County's interpretation thereof, the carriage house/garage is not a dwelling/accessory dwelling/residential unit" and that "a dwelling requires cooking facilities and more particularly, the structure needs to be plumbed with a 220V outlet for a stove." RJW then filed a motion to exclude Lewis as a witness, arguing that Lewis had "never been identified as someone to testify to the matters alluded to" in the supplemental disclosure, and that it was "severely prejudiced" as a result. Specifically, RJW asserted that because it "has not had any opportunity to prepare for [Lewis], it has not received any documents from [Lewis] or a summary of [his] testimony and it has not had the ability to have its own expert . . . review or prepare for this testimony."

¶9 The trial court ultimately allowed Lewis to testify, reasoning that, although the initial description of Lewis's testimony was "a little too generic," Lewis "was disclosed" as a witness. The trial judge also stated, "I'm not sure it's fair to take a disclosure that is, sort of, borderline and not raise any objections to it until the eve of trial."

¶10 At trial, several experts testified. Upwall, Lewis, and Eric Hoff, a Park City-based architect, testified for Heath.[2] Richard Brighton, also a Park City-based architect, testified for RJW.

¶11 Upwall testified about his experience with Summit County and how the county decides whether a structure is equipped for cooking. He stated, "I believe the county holds it to

---

2. Michael Stoker, a consultant to the HOA and its Architectural Committee, also testified. It appears that the trial court attributed to Stoker some testimony on the equipped-for-cooking criterion that he did not actually provide. Because our analysis of Lewis's testimony and Summit County's requirements for residential structures reaches the same result without consideration of Stoker's testimony, we analyze that issue without reference to Stoker.

the definition of is there a possibility for, or plumbed, or the intention for a range and either a 220 volt range or a gas range cooking appliance."

¶12    Hoff testified that, while he has never built anything in Park City, he has experience working on projects there.[3] He testified that the Heath structure is not equipped for cooking. Hoff noted, "[The carriage house] lack[s] a stove or the facilities to put a stove in, whether it would be natural gas plumbed into that counter area or a 220 outlet in there, which is typically required, and that's been my experience in all the different jurisdictions where I've designed these type of structures."

¶13    Lewis testified that he reviews "site plans and building plans for construction" for the Summit County Planning Department. He stated that "[i]t has been the practice of the department that a microwave, by itself, would not" be considered a kitchen or cooking facility, and that a structure would "require an oven or a stove" to be equipped for cooking. Lewis further testified that a 110-volt outlet is not considered a hook-up for a cooking facility.

¶14    Brighton interpreted the equipped-for-cooking criterion. He testified that "[t]heir definition is [the building] has to have cooking," that "[b]y definition, a microwave is for cooking," but that he is "not certain what the county says" about the presence of a microwave in a structure to fulfill the equipped-for-cooking criterion.

¶15    The trial court also received evidence on the plans that Heath submitted to the HOA for review. The court heard

---

3. Hoff's testimony about his experience is somewhat unclear. Hoff testified that, in addition to designing for other HOA communities, he works as an architect for architectural review committees for other HOAs. Hoff's expertise is not being challenged on appeal.

testimony from Michael Stoker, an architect that the HOA's Architectural Committee hired as a consultant. Stoker testified that the plans Heath submitted to the HOA "were complete enough for the HOA and their review process." The record also contains a copy of the CC&Rs, which state that the purpose of the HOA's review is to "ascertain whether the architecture conforms to the Design Guidelines." This includes considering

> the materials to be used on the external features . . . [,] exterior colors, harmony of external design with existing structures within said subdivision, the building bulk or mass of said buildings or structures, the location with respect to topography, existing trees and finished grade elevations, and harmony of landscaping with the natural setting and surroundings.

¶16    After a three-day bench trial, the trial court concluded both that Heath had fulfilled his obligations under the CC&Rs for his plans to be approved and that the detached building was not a residence. In its ruling, the trial court noted Lewis's testimony and found the practice of Summit County to be of particular relevance. The trial court also relied on Upwall's testimony, stating,

> Mr. Upwall also noted that under the applicable provisions of the Snyderville Basin Development Code *and the County's policies and practice*, a structure is not considered a "dwelling" unless it contains cooking facilities that require a 220-volt electrical system, or a natural gas system sufficient for a stove or range, and that a microwave oven is not considered cooking facilities.

(Emphasis added.) And the trial court relied on Hoff's testimony, stating,

> Based on Mr. Hoff's *experience and review of the applicable codes and regulations*, a structure is not considered a residence or dwelling unless it contains a full kitchen that includes a stove and the wiring or plumbing for a stove, in particular a 220 volt wiring or other natural gas plumbing for a stove.

(Emphasis added.)

¶17　RJW appeals, claiming that the court erred by allowing Lewis to testify and that it was prejudiced by that error. RJW also contends that the court erred in concluding that Heath did not violate the CC&Rs, which require the HOA's approval of "complete plans."

ISSUES AND STANDARDS OF REVIEW

¶18　First, RJW appeals the trial court's determination that Heath's pretrial disclosure of his non-retained expert, Lewis, was sufficient under rule 26 of the Utah Rules of Civil Procedure. While interpretations of the Utah Rules of Civil Procedure are questions of law reviewed for correctness, *Pete v. Youngblood*, 2006 UT App 303, ¶ 7, 141 P.3d 629, "we grant district courts a great deal of deference in matters of discovery and review discovery orders for abuse of discretion," *Dahl v. Dahl*, 2015 UT 79, ¶ 63. "Accordingly, we 'will not find abuse of discretion absent an erroneous conclusion of law or where there is no evidentiary basis for the trial court's ruling.'" *Id.* (quoting *Green v. Louder*, 2001 UT 62, ¶ 37, 29 P.3d 638).

¶19　Second, RJW appeals the trial court's determination that Heath had fulfilled his obligations under the CC&Rs by submitting plans to the HOA that were not complete enough to receive a building permit from the county. "We review all findings of fact for clear error, granting the district court great deference in its review of the evidence." *Dansie v. Hi-Country*

*Estates Homeowners Ass'n*, 2004 UT App 149, ¶ 7, 92 P.3d 162. "We review all conclusions of law for correctness, granting the district court no deference." *Id.* ¶ 6.

ANALYSIS

I. Disclosure of Non-retained Experts

¶20 The trial court erred when it determined that Heath's pretrial disclosure of Lewis was sufficient, but we affirm its ultimate ruling and judgment because the error was harmless.

A.    Insufficient Disclosure of Non-retained Expert's Expected Testimony

¶21 Rule 26 of the Utah Rules of Civil Procedure governs discovery and disclosures. If a party intends to present evidence from a non-retained expert, rule 26 requires that the party "serve on the other parties a written summary of the facts and opinions to which the witness is expected to testify." Utah R. Civ. P. 26(a)(4)(E). "If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure."[4] *Id.* R. 26(d)(4).

¶22 Since the rules were revised in 2011, the particular issue presented here has not been subject to appellate review.[5] We

---

4. The trial court made no findings that good cause existed for the delay, nor did the court find that the failure was harmless. Accordingly, we review only the actual basis of the trial court's decision—that Heath's disclosure of Lewis was sufficient.

5. Recent Utah decisions have explored disclosure where an expert witness was not properly designated, but have not

(continued…)

begin by considering the advisory committee notes to rule 26, which offer persuasive, but not binding, interpretative guidance for the rule. *See Burns v. Boyden*, 2006 UT 14, ¶ 18 n.6, 133 P.3d 370 ("We note that, although not authoritative, the advisory committee notes to the Utah Rules of Evidence merit great weight in any interpretation of those rules.").

¶23 Of the written summary requirement—both for summaries of fact witnesses and, presumably, expert witnesses—the advisory committee states:

> [T]he summary of the witness's expected testimony should be just that—a summary. The rule does not require prefiled testimony or detailed descriptions of everything a witness might say at trial. On the other hand, it requires more than the broad, conclusory statements that often were made under the prior version of Rule 26(a)(1) (e.g., "The witness will testify about the events in question" or "The witness will testify on causation."). The intent of this requirement is to give the other side basic information concerning the subjects about which the witness is expected to testify at trial, so that the other side may determine the witness's relative

---

(…continued)

explored the sufficiency of the summary of expected testimony. *See, e.g., Coroles v. State*, 2015 UT 48, ¶ 21, 349 P.3d 739 (reviewing untimely designation of experts under the scheduling order); *Baumann v. Kroger Co.*, 2016 UT App 165, ¶ 12, 381 P.3d 1135 (reviewing sanctions for a party's failure to make expert disclosures), *cert. granted*, 384 P.3d 566 (Utah Oct. 31, 2016) (No. 20160686); *Solis v. Burningham Enters. Inc.*, 2015 UT App 11, ¶ 24, 342 P.3d 812 (holding that the trial court correctly concluded that a party's failure to designate an expert witness was not harmless).

importance in the case, whether the witness should be interviewed or deposed, and whether additional documents or information concerning the witness should be sought. This information is important because of the other discovery limits contained in the 2011 amendments, particularly the limits on depositions.

Utah R. Civ. P. 26 advisory committee notes. Directly referencing the rule governing non-retained expert disclosures, the advisory committee notes state,

Rules 26(a)(4)(E) and 26(a)(1)(A)(ii) are not intended to elevate form over substance—all they require is that a party fairly inform its opponent that opinion testimony may be offered from a particular witness. And because a party who expects to offer this testimony normally cannot compel such a witness to prepare a written report, further discovery must be done by interview or by deposition.

*Id.*

¶24 Certainly, scrutiny of non-retained expert disclosures should not become a rigid critique of form. But the committee's comment that the rule requires that "a party fairly inform its opponent that opinion testimony may be offered from a particular witness," *id.*, must contemplate that the information provided will include at least a "written summary of the facts and opinions to which the witness is expected to testify," *id.* R. 26(a)(4)(E). Given the context of this clause, it cannot reasonably be construed to require the mere mention that opinion may be offered. Read that way, even a topic would not be required. Instead, a party must "fairly inform," which includes "that such witnesses be identified and the information about their anticipated testimony should include . . . any opinion testimony

that a party expects to elicit from them at trial." *Id.* R. 26 advisory committee notes. Along with the expert designation, there must be some disclosure of expected opinion and fact testimony that is "more than . . . broad, conclusory statements." *Id.*; *cf. Anderson v. Bristol, Inc.*, 936 F. Supp. 2d 1039, 1059–60 (S.D. Iowa 2013) (concluding that summaries of expected testimony for non-retained experts were inadequate under the similar rule 26 of the Federal Rules of Civil Procedure, where the plaintiff "merely state[d] the witness' occupation, connection with the case, and then state[d] what type of expertise the witness 'presumably' possesse[d]," or "state[d] only the name of the physician, the physician's title, and then refer[red] Defendants to previously produced medical records").

¶25   The requirement to provide a summary of expected testimony is not merely a matter of form. Disclosure of specific facts and opinions is required so that parties can make better informed choices about the discovery they want to undertake or, just as important, what discovery they want to forgo. More complete disclosures serve the beneficial purpose of sometimes giving the opposing party the confidence to not engage in further discovery. But this is only true if the potential for surprise is reduced by at least minimum compliance with the rule 26 disclosure requirements.

¶26   In this case, Heath failed to provide adequate disclosure for the expected testimony of his non-retained expert, Lewis.[6]

---

6. Both parties briefed this case assuming that Lewis's testimony on the practices of Summit County is expert testimony and we treat it as such here. We agree that testimony on how to interpret terms would constitute expert testimony. *See Universal Inv. Co. v. Carpets, Inc.*, 400 P.2d 564, 566 (Utah 1965) ("Where . . . terms may have a particularized application or meaning and there is room for uncertainty and disagreement . . . it was proper for the trial court to . . . allow extraneous evidence by experts . . . ."). We express no opinion on whether testimony about an observed

(continued…)

The duty imposed by the rule is to disclose a summary of the facts and opinions of non-retained experts, and here there were no facts or opinions disclosed whatsoever. All Heath provided was a list of general topics about which Lewis, along with nine other witnesses, might testify, such as that the witnesses "may be asked to provide specific architectural, design, construction, or general building opinions regarding the Heath project." But this is all too similar to the examples in the committee notes of "broad, conclusory statements" specifically warned against, like that "'The witness will testify about the events in question' or 'The witness will testify on causation.'" Utah R. Civ. P. 26 advisory committee notes. And the trial court's conclusion that, while "a little too generic," the disclosure complied with rule 26 can stand only if the requirement for a summary of expected facts and opinions is read out of the rule.[7]

¶27 Recognizing that non-retained experts may pose challenges for the sponsoring party, any requirement for precise disclosure of expected testimony could become problematic. *See id.* ("There are a number of difficulties inherent in disclosing expert testimony that may be offered from fact witnesses. . . . [M]any of these fact witnesses will not be within the control of the party who plans to call them at trial."). Hence the

---

(…continued)
practice is expert testimony as opposed to percipient witness testimony. *See generally Astill v. Clark*, 956 P.2d 1081, 1087–88 (Utah Ct. App. 1998) (explaining the difference between percipient and expert testimony).

7. We acknowledge Heath's argument that any prejudice to RJW was minimized by his supplement at the eve of trial. We do not analyze the timeliness of the supplement because that was not the basis of the trial court's ruling. However, we remain skeptical that a supplemental disclosure made on the eve of trial is timely where the receiving party is prejudiced by not having an opportunity to conduct discovery based on that supplement.

requirement for non-retained experts is different from that of retained experts where a full, written report can be obtained and the expert may be available for consultation. *Compare id.* R. 26(a)(4)(E) (explaining requirements for non-retained experts), *with id.* R. 26(a)(4)(A), (B) (explaining requirements and discovery limits for retained experts). The advisory committee notes acknowledge the realities of non-retained expert testimony and point out that rule 26 insulates against the imposition of overly specific disclosure requirements in favor of a more pragmatic, flexible standard. *See id.* R. 26 advisory committee notes ("Where [witnesses are uncooperative] . . . the rules require that such witnesses be identified and the information about their anticipated testimony should include that which is required under Rule 26(a)(1)(A)(ii), which should include any opinion testimony that a party expects to elicit from them at trial."). The rule also requires timely supplementation when a disclosing party learns that a disclosure is incomplete or incorrect, which ultimately provides even more flexibility to get the disclosure right. *See id.* R. 26(d)(5). But here, the trial court concluded that Heath's initial disclosure was sufficient where Heath disclosed nothing but general topics on which the expert might opine. This cannot satisfy the rule. Therefore, we hold that the trial court incorrectly concluded that Heath's disclosure of Lewis's expected testimony satisfied the rule 26 disclosure requirement.

¶28    To the extent the trial court's remarks suggested that RJW had a duty to object earlier than it did, we disagree. In the case at hand, Heath identified Lewis as a witness in September 2013, and supplemented his disclosure in March 2014, just four days before trial. RJW moved to exclude Lewis's testimony on the same day. Heath argues that rule 37 of the Utah Rules of Civil Procedure supports the trial court's observation that RJW should have objected earlier, citing *Dahl v. Dahl* as an example. *See* 2015 UT 79, ¶¶ 68, 71 (concluding that the district court did not abuse its discretion when it denied a request to compel supplementation because the request was filed two years after disclosures were received).

¶29   The circumstances in *Dahl* are dissimilar. Where a party desires that information be provided, as in *Dahl*, that party cannot unnecessarily delay efforts to compel such production. By contrast, where a party desires to use a witness or a document, and where that party's disclosure is inadequate, the opposing party remains under no obligation to bring the issue to a head. An insufficient disclosure by one party does not shift the burden and risk to resolve the insufficient disclosure to the other party, who now must either seek court intervention or waive objections to the sufficiency of the disclosure. Such an approach would undermine the purpose of the rule, which ultimately is to encourage open disclosures without a formal discovery request, and would encourage scant disclosures at the outset in hopes that the opposing party will not seek to compel more.

¶30   Instead, the rules embrace the idea of competing risks. A disclosing party who endeavors, by stratagem or otherwise, to disclose as little as possible faces a significant risk that the disclosure will be found insufficient and the evidence or the witness may not be allowed.[8] *See* Utah R. Civ. P. 26(d)(4) (exclusion of witness or exhibit is the presumed sanction). To minimize this risk, disclosing parties should be liberally forthcoming rather than minimally compliant and risk the possible consequences of testimony exclusion. Likewise, where the sponsoring party under-discloses, the receiving party may object and attempt to compel further disclosure. *See id.* R. 26(b)(3), 37(a)(1)(A). And while there is no penalty in the rule for failing to do so, the receiving party does take the risk that a trial court may ultimately find the disclosure sufficient, as occurred here.

---

8. The penalty for failing to provide adequate disclosure is found within rule 26 itself and is not dependent on rule 37 as Heath suggests. *See Baumann*, 2016 UT App 165, ¶ 8 n.5 ("In 2011 . . . amendments to the Utah Rules of Civil Procedure included a provision similar to rule 37(f) in rule 26(d)(4), which governs this case.").

¶31 Heath additionally argues that he was excused from a more specific disclosure requirement because topics of potential testimony are all that were required since Lewis was "uncooperative" by virtue of "several failed attempts" to interview him, and because he supplemented the disclosure soon after he was able to obtain additional information. Heath points out that the advisory committee states:

> For uncooperative or hostile witnesses any summary of expected testimony *would necessarily be limited to the subject areas the witness is reasonably expected to testify about.* For example, defense counsel may be unable to interview a treating physician, so the initial summary may only disclose that the witness will be questioned concerning the plaintiff's diagnosis, treatment and prognosis. After medical records have been obtained, the summary may be expanded or refined.

*Id.* R. 26 advisory committee notes (emphasis added). But Heath's reliance on this language is somewhat misplaced. This particular note speaks generally about initial disclosures of witnesses under rule 26(a)(1). The committee commented more specifically about uncooperative non-retained experts, saying,

> [In the case of uncooperative non-retained experts], disclosures will necessarily be more limited. On the other hand, consistent with the overall purpose of the 2011 amendments, a party should receive advance notice if their opponent will solicit expert opinions from a particular witness so they can plan their case accordingly. In an effort to strike an appropriate balance, the rules require that such witnesses be identified and the information about their anticipated testimony should include that which is required under Rule 26(a)(1)(A)(ii), which

should include any opinion testimony that a party
expects to elicit from them at trial.

*Id.* Both the language of the rule itself and the advisory
committee notes require the disclosure of expected fact and
opinion testimony of non-retained experts to be included in the
disclosure, even where the witness is hostile or uncooperative.

¶32   Parties may find themselves in a position where they do
not know exactly what a non-retained expert may say and
therefore assume they need not disclose expected opinion
testimony. But the rule does not require parties to disclose the
testimony that they *know* will be offered, but rather what they
*expect* to elicit. "Expect" means "to await, look forward to."
*Expect*, Webster's Third New Int'l Dictionary 799 (1971). To
mitigate the risk that a witness will not be allowed to testify,
parties should disclose the testimony that they await, that they
look forward to, or that they hope the expert will give. *See id.*
(listing "hope" as a synonym of "expect"). Again, a disclosing
party who endeavors to disclose as little as possible faces a
significant risk that the disclosure will be found insufficient and
the evidence or the testimony may not be allowed. That risk
should have been realized here. The disclosure provided no
expected testimony beyond broad topics on which Lewis might
opine. No actual fact or opinion was identified. This cannot
satisfy rule 26. Therefore, the trial court allowed Lewis to testify
under "an erroneous conclusion of law" which constitutes "an
abuse of discretion." *See Dahl v. Dahl*, 2015 UT 79, ¶ 63 (citation
and internal quotation marks omitted).

B.     Harmless Error

¶33   We must now examine the effect of the trial court's error.
"Even if . . . the trial court exceeded its discretion," an appellant
"has the burden to show that the error was 'substantial and
prejudicial,'" meaning that the appellant "'was deprived in some
manner of a full and fair consideration of the disputed issues by
the [trier of fact].'" *Avalos v. TL Custom, LLC*, 2014 UT App 156,

¶ 24, 330 P.3d 727 (quoting *Ashton v. Ashton*, 733 P.2d 147, 154 (Utah 1987)); *see also Covey v. Covey*, 2003 UT App 380, ¶¶ 20–21, 80 P.3d 553 (placing the burden to show prejudice on the appellant in an appeal from a bench trial). If we conclude that an error is harmless, "we are not required to reverse." *West Valley City v. Kent*, 2016 UT App 8, ¶ 23, 366 P.3d 415. An error is harmless when it is "sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings." *Covey*, 2003 UT App 380, ¶ 21 (citation and internal quotation marks omitted). That is, "an error is harmful only if the likelihood of a different outcome is sufficiently high as to undermine our confidence in the verdict." *Id.* (citation and internal quotation marks omitted).

¶34 Because Lewis's testimony was cumulative of evidence admitted from other sources, our confidence in the trial court's ultimate decision here is not undermined. *See In re L.B.*, 2015 UT App 21, ¶ 6, 343 P.3d 332 (affirming juvenile court's order under harmless error because "there was sufficient . . . evidence from other sources supporting the juvenile court's determination"); *cf. Larsen v. Johnson*, 958 P.2d 953, 958 (Utah Ct. App. 1998) ("The more evidence supporting the verdict, the less likely there was harmful error." (quoting *State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992))).

¶35 Here, Lewis testified that based on his experience reviewing building plans for Summit County, a microwave oven alone generally does not satisfy the equipped-for-cooking criterion for a structure to be considered a residence, and that Summit County does not consider a 110-volt outlet sufficient to meet the equipped-for-cooking criterion. But the record also contains similar testimony from other sources, which the trial court expressly relied on in making its ruling. For instance, the trial court relied on Upwall, who, based on his experience in Summit County, testified, "I believe the county holds it to the definition of is there a possibility for, or plumbed, or the intention for a range and either a 220 volt range or a gas range cooking appliance." The trial court acknowledged Upwall's

testimony as going to the "policies and practice" of Summit County, and Upwall's testimony about Summit County's policies and practice mirrors Lewis's testimony.

¶36 Additionally, Hoff's testimony added to the evidence of Summit County's policies and practice. Hoff, like Lewis and Upwall, testified that the carriage house does not meet the equipped-for-cooking criterion. Hoff testified, "[The carriage house] lack[s] a stove or the facilities to put a stove in, whether it would be natural gas plumbed into that counter area or a 220 outlet in there, which is typically required, and that's been my experience in all the different jurisdictions where I've designed these type of structures." While the court did not specifically use the phrase "policies and practice" of Summit County when citing to Hoff's testimony, the court did acknowledge that Hoff's testimony was based on his "experience and review of the applicable codes and regulations." The trial court's reference to Hoff's experience and review of the applicable codes and regulations is a reference to Hoff's experience working in Summit County, the source of the applicable codes and regulations for the Heath project—where Hoff testified he had experience. Therefore, Hoff's testimony also goes to the policy and practice of Summit County. Like Upwall's testimony, Hoff's testimony is cumulative of Lewis's testimony and further demonstrates the harmlessness of the admission of Lewis's testimony.

¶37 In light of the testimonies given by Upwall and Hoff, "there was sufficient . . . evidence from other sources supporting the [trial] court's determination," *see In re L.B.*, 2015 UT App 21, ¶ 6, and any error in allowing Lewis's testimony did not affect the outcome of the trial.

¶38 RJW argues, however, that "none of the architects testified directly regarding Summit County's practice and procedure for determining whether a structure was residential," and that "[o]nly [Lewis] so testified." As outlined above, this argument is unsupported by the record. Upwall and Hoff each testified about

the policy and practice of Summit County, and the trial court relied on their testimony to understand the county's policies and practice. While true that Lewis, an employee of Summit County, is "uniquely qualified" to testify about Summit County's policies and practices, the other experts are nevertheless qualified to testify to the same policies and practices based on their respective experience working in Summit County. And while RJW's own expert, Brighton, testified differently from the other architects, the trial court was not obligated to rely on RJW's expert.[9] Thus, the same information was admitted into evidence, with or without Lewis's testimony. In light of all of the other unchallenged evidence, RJW cannot show that it was prejudiced by Lewis's cumulative testimony.[10]

---

9. In its ruling, the trial court only mentioned Brighton's testimony to point out how "even RJW's expert witness and architect . . . testified that, under the applicable codes and regulations, the Carriage House is a single story above grade." The trial court apparently did not find Brighton's testimony—that the presence of a microwave oven or a hot plate in a structure could fulfill the equipped-for-cooking criterion and transform the non-residential structure into a residence—compelling.

10. RJW argues that it was prejudiced because it was unable to prepare for Lewis's testimony. Because we hold that Lewis's testimony was cumulative, we need not address this issue. However, we note not only that the information in Lewis's testimony was cumulative, but also that RJW had access to Upwall's deposition testimony from July 2013. *See supra* ¶ 6. Because RJW already knew that Upwall would testify that Summit County requires a residential structure to be equipped for a range, and because Lewis testified similarly, any prejudice to RJW is "sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings." *See Covey v. Covey*, 2003 UT App 380, ¶ 21, 80

(continued…)

## II. Complete Plans

¶39   The trial court correctly concluded that Heath fulfilled his obligations under the CC&Rs.

¶40   "[R]estrictive covenants are to be interpreted using the same rules of construction that are used to interpret contracts." *Fort Pierce Indus. Park Phases II, III & IV Owners Ass'n v. Shakespeare*, 2016 UT 28, ¶ 19, 379 P.3d 1218. We interpret the terms of the CC&Rs according to their usually accepted meanings and in light of the document as a whole. *See id.* ¶ 19 n.3. Although the term "complete plans" is not defined, this does not mean that the CC&Rs are ambiguous. *See WebBank v. American Gen. Annuity Service Corp.*, 2002 UT 88, ¶ 20, 54 P.3d 1139 ("An ambiguity exists in a contract term or provision if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." (citation and internal quotation marks omitted)); *see also Equitable Life & Cas. Ins. Co. v. Ross*, 849 P.2d 1187, 1192 (Utah Ct. App. 1993) ("[A] contract term is not ambiguous simply because one party ascribes a different meaning to it to suit his or her own interests.").

¶41   We agree with the trial court that, when looking at the CC&Rs as a whole, Heath fulfilled his obligations. The provision restricts property owners from building on their properties without HOA approval. RJW argues, "In the context of architectural or building plans, 'complete plans' must . . . mean the plans for which a lot owner could receive a building permit from the county." RJW further argues that the CC&Rs require

---

(…continued)
P.3d 553 (citation and internal quotation marks omitted). We are not convinced that, had it deposed Lewis, RJW would have been any more prepared for testimony that Summit County requires a 220-volt outlet or gas hook-ups for a range because it already knew that that testimony was forthcoming from another witness.

complete plans to be approved by the HOA's Architectural Committee and that because the plans that Heath submitted were not complete enough to request or receive a building permit from the county, the Architectural Committee never reviewed complete plans. Therefore, RJW argues, the HOA's approval of the project is void, and we should reverse and order that the whole structure be torn down.

¶42 RJW conflates what might be required by a governmental entity with the language, purpose, and context of the particular CC&R provision in play here. Absent its own conclusion about the ordinary meaning of "complete plans," RJW has pointed to no evidence showing that the concerns of the HOA are identical to Summit County's concerns and require plans that are complete enough for a building permit. In fact, the CC&Rs state that the purpose of the HOA's review is to allow the Architectural Committee to "ascertain whether the architecture conforms to the Design Guidelines," which involves considering cosmetic, aesthetic, and building material requirements completely irrelevant to safety or other applicable ordinance requirements. Given the purpose of the HOA's review, we interpret the term "complete plans" to mean plans that allow the HOA to ascertain whether the structure adheres to the cosmetic, aesthetic, and building material requirements as set forth in the design guidelines.

¶43 According to the testimony at trial, the plans were complete enough for the HOA to conduct its review. The HOA approved the plans and Heath was within his rights to move forward with the construction project. RJW fails to demonstrate how the level of specificity in what was supplied to the HOA compromised the HOA's ability in any material way to ensure compliance with the CC&Rs. We see no error in the trial court's conclusion that Heath fulfilled his obligations in obtaining the HOA's approval.

CONCLUSION

¶44    The trial court made an erroneous conclusion of law, and therefore abused its discretion, when it determined that Heath's pretrial disclosure of Lewis was sufficient under rule 26 of the Utah Rules of Civil Procedure. Lewis's testimony should have been excluded. However, the trial court's ultimate conclusion is affirmed because the error in allowing Lewis to testify was harmless. Lastly, the trial court did not err when it concluded that Heath fulfilled his obligations under the CC&Rs. The HOA approved the plans, and Heath was entitled to proceed with construction.

¶45    Affirmed.

_____