2024 UT App 26

# THE UTAH COURT OF APPEALS

KAYLEEN K. SABOUR, JULIE R. MYLANDER, AND DANIEL E. KOLLER,
Appellees,
*v.*
MARK A. KOLLER,
Appellant.

Opinion
No. 20220699-CA
Filed February 29, 2024

First District Court, Logan Department
The Honorable Spencer D. Walsh
No. 190100295

Joseph M. Chambers and J. Brett Chambers,
Attorneys for Appellant

Stephen M. Sargent and Matthew J. Ball,
Attorneys for Appellees

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JOHN D. LUTHY
concurred.

MORTENSEN, Judge:

¶1     A family feud followed a sibling's breach of his duties as the trustee of a family trust. After a bench trial, the district court granted the complaining siblings much of the relief they sought, including removing the trustee. The now-removed trustee raises claims of error on appeal having to do with witness disclosures, computation of damages, and admission of certain expert testimony. He further challenges whether sufficient evidence existed to justify his removal and specifically challenges the district court's determination that he abused the discretion granted him as trustee. We reject all claims of error, either on their merits or on harmlessness grounds, and affirm.

BACKGROUND

¶2     Evan O. Koller (Grantor) established the Evan O. Koller Revocable Living Trust (Trust) in December 2006. Grantor's six children were named beneficiaries.

¶3     After Grantor's death, one of the children, Mark A. Koller, eventually became the trustee of the Trust in early 2016 after obtaining a declaratory judgment to that effect in district court. This court subsequently affirmed that decision. *See In re Evan O. Koller Revocable Living Trust*, 2018 UT App 26, ¶¶ 6–8, 31, 414 P.3d 1099. Three of the beneficiary children, Kayleen K. Sabour, Julie R. Mylander, and Daniel E. Koller (collectively, the Appellees) subsequently sued, alleging that Mark breached his duties as trustee in a variety of ways.[1]

¶4     As relevant here, the Trust provided that its property was to be distributed as follows: (1) the Trust's farmland could not "be sold and divided among the beneficiaries" but was "to be held in trust and maintained for the benefit of Grantor's children and for future generations, unless all [the] beneficiaries unanimously [agreed], in writing, to sell or divide any part or all of the property" and (2) the remainder of the trust estate (non-farmland assets) was to be divided equally among the six beneficiaries. Among other powers, the Trust granted the trustee discretion to hold and operate any property in the Trust and to withhold from distribution property that was "subject to conflicting claims."

¶5     According to the Appellees' complaint, the Trust held significant assets, including (1) approximately 5,300 acres of farmland (the Farm); (2) 52% of the shares of the Koller Corporation, which owned and operated equipment used on the Farm; (3) residential lots in Idaho and a commercial lot in Utah (the Lots); and (4) "tangible and intangible personal property."

---

1. We refer to the parties by their given names because some share a common surname.

The other 48% of the Koller Corporation shares was held by the six beneficiaries—8% each. The Appellees maintained that, following the passage of a resolution by the officers, the Koller Corporation was to be dissolved in 2016 but Mark, its president, did not follow through on the action.

¶6    The Appellees identified the following alleged breaches of duty on the part of Mark: (1) failing to distribute to the beneficiaries (a) Grantor's personal effects, (b) the Trust's share of the Koller Corporation (which Mark had neglected to dissolve), (c) the Lots, (d) lease payments, and (e) crop insurance payments; (2) failing to rent Grantor's house; (3) "failing to provide complete, accurate or sufficient annual accountings"; (4) failing to "properly and prudently manage, sell and/or operate assets of the Trust including, but not limited to the Farm, the Lots" and Grantor's house; (5) failing "to efficiently retire or eliminate debts and liabilities of the Trust"; and (6) paying himself "excessive and unnecessary compensation" for menial tasks.

¶7    The Appellees asserted eight claims for relief. For the first three claims—breach of fiduciary duty, violation of section 75-7-801 of the Utah Code,[2] and breach of the trust agreement—they sought monetary damages. In the fourth claim, they sought the removal of Mark as trustee. The fifth claim was a request for a full accounting of the Trust's assets and activities. For the sixth claim, they sought rescission of all transactions involving alleged self-dealing by Mark and restoration to the Trust of all money to which Mark was not entitled. In their seventh claim, the Appellees asked for an injunction compelling Mark to perform his duties as trustee and barring him from committing a further breach of trust and from paying legal expenses from assets of the Trust. And in

_____

2. "Upon acceptance of a trusteeship, the trustee shall administer the trust expeditiously and in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with [the Utah Uniform Trust Code]." Utah Code § 75-7-801.

their final and eighth claim, they sought an award of reasonable attorney fees.

¶8      In their rule 26(a) initial disclosures, the Appellees did not include Mark's name as a witness to be called. However, Mark was listed in the same document on a list of individuals "likely to have discoverable information supporting [the Appellees'] claims." The Appellees disclosed themselves as the only witnesses who would testify. And even though they were represented by counsel, the Appellees' summaries of their expected testimony were identical (excepting name and pronoun) and spartan:

> [Name] is expected to testify that (a) Mark A. Koller failed to administer the Trust prudently, expeditiously and impartially, and (b) [she or he] has been damaged by Mark A. Koller's failures as trustee.

The Appellees also included a one-page listing of eight vague categories purporting to compute the monetary damages they had suffered.

¶9      Mark deposed the Appellees.

¶10     The Appellees retained and called at trial two expert witnesses: Expert 1, who addressed the fees Mark took as trustee, and Expert 2, who opined on the rental value of Grantor's home.

¶11     Mark subsequently filed four motions for partial summary judgment and three motions in limine.

¶12     Mark's first motion requested summary judgment because the Appellees had allegedly "failed to set forth both the fact of damages and a method of their calculations that was apparent in the initial disclosures." The court largely denied the motion, ruling that any inadequacy in the damages calculation was either harmless or for good cause.

¶13 The second motion sought summary judgment on the basis that some of the Lots were farmland, which, under the terms of the Trust, could not be sold without the unanimous consent of the beneficiaries. The court denied this motion because it concluded there was a dispute of material fact as to the nature of the Lots in question.

¶14 Mark's third motion asked the district court to rule that the trust agreement gave Mark discretion regarding the retention of a gun collection, coin collection, shares of the Koller Corporation, the Lots, and various sources of revenue. The district court denied the motion after determining that a reasonable fact finder could conclude that Mark had "abused his discretion [with] respect to [the] distribution of the Trust assets by obtaining more than $150,000 for himself using Trust assets while only distributing $2,800 to the beneficiaries since becoming" trustee.

¶15 The fourth motion sought a determination that Mark could not be compelled to dissolve the Koller Corporation because only the company's officers and not the shareholders had approved the dissolution. The district court granted this motion.

¶16 The three motions in limine asked the court to exclude the testimony of certain witnesses. Two of these motions concerned the expert witnesses. With respect to Expert 1, Mark argued that the expert had failed to disclose all the data he relied on and had opined in his report on topics "clearly outside his expertise and field." The court denied the motion, ruling that Expert 1 did reveal the data he used and that Mark was free to raise an objection during Expert 1's trial testimony if Mark believed Expert 1 was "exceeding the scope of his expertise" or there was not "sufficient foundation . . . for him to testify about certain topics." Regarding Expert 2, Mark argued that the expert's appraisals were unreliable and did not comply with professional standards. The court denied the motion, stating that it was "in a position to either accept, reject, or partially accept the testimony" and that Mark would "have an

opportunity to cross-examine," "provide rebuttal testimony," and "attack the credibility of that testimony."

¶17    In the third motion in limine, Mark asked the court, among other requests, to exclude the Appellees from "providing any opinions at trial that they could and should have disclosed," arguing that their "initial disclosures were grossly inadequate and vague to the point of being nondisclosures." More specifically, Mark stated,

> Rule 26 requires much more than simply parroting conclusory complaint allegations. In no way did [the Appellees] disclose how they had been allegedly harmed. They did not disclose how they would testify the Trust was administered imprudently. They did not disclose how they would testify it was not administered expeditiously. They did not disclose how they would testify [Mark] had acted partially.

The district court denied this aspect of the motion, saying,

> [Mark] did have an opportunity to depose all the [Appellees] in this case well in advance of trial and question them about these alleged failures and alleged damages that . . . they claim they have suffered.
>
> The Court finds that while the disclosures are brief they are in fact a summary of [the Appellees'] expected testimony.
>
> The Court finds that this summary, in addition to [Mark] having had the opportunity to depose the [Appellees], has adequately prepared [Mark] for [the Appellees'] anticipated testimony.

¶18 After a four-day bench trial, the district court ruled in favor of the Appellees. Specifically, the court ruled the Appellees were "entitled to judgment in their favor" with respect to their first claim (breach of fiduciary duty), second claim (violation of section 75-7-801), and third claim (breach of the trust agreement). The court did not award any damages for these three claims.

¶19 The court also granted the Appellees' fourth claim, namely, the removal of Mark as trustee.

¶20 On the fifth claim (accounting), the court ordered Mark, "at his own expense," to "prepare and provide to all beneficiaries of the Trust a complete and accurate accounting of all financial transactions entered into by [Mark] with respect to the Trust during his trusteeship."

¶21 On the sixth claim for relief (rescission and restoration), the court ruled that while the Appellees were entitled to judgment in their favor, they had "failed to carry their burden of proving damages, [so] no money judgment [was] entered for [them] on this claim."

¶22 Having removed Mark as trustee, the court considered the Appellees' seventh claim for relief—an injunction requiring Mark to fulfill his trustee duties—moot. However, the court did enjoin and order the successor trustee to

> (a) expeditiously distribute the firearms, coins, vehicles and Koller Corporation shares owned by the Trust to the beneficiaries of the Trust, and (b) after assessing the Trust's financial status and ensuring all outstanding liabilities of the Trust have been satisfied, . . . distribute (i) all but $20,000.00 of the Trust's cash, and (ii) the [Lots].

¶23 On the eighth claim for relief (attorney fees), the court ruled in the Appellees' favor, determining that Mark must pay

about $68,500 from his own pocket. In addition, because Mark "could not have believed in good faith that it was reasonable or appropriate for him to (a) charge the Trust at the rate of $60.00 per hour for such menial work as lawn mowing and hauling garbage or (b) refuse to distribute" Grantor's personal property, the court ordered Mark to reimburse the Trust around $88,000 for the cost of his defense.[3]

¶24    Mark appeals.

## ISSUES AND STANDARDS OF REVIEW

¶25    Mark raises five issues on appeal. First, he asserts that the district court abused its discretion in determining that the Appellees' witness disclosures were sufficient and allowing the Appellees to testify in their case-in-chief. Second, Mark asserts that the district court abused its discretion in allowing the Appellees' "claims for tools and equipment, personal property, and farm and hunting lease revenue even though there were inadequate damage computations." Third, he contends that the court abused its discretion in not excluding the Appellees' experts. These first three issues share the same standard of review. "While interpretations of the Utah Rules of Civil Procedure are questions of law reviewed for correctness, we grant district courts a great deal of deference in matters of discovery and review discovery orders for abuse of discretion." *RJW Media Inc. v. Heath*, 2017 UT App 34, ¶ 18, 392 P.3d 956 (cleaned up).

¶26    Mark next claims that because the district court "determined Appellees did not meet their burden of proof to

---

3. To be clear, this amount was not damages. Instead, it was the amount the court determined that Mark owed the Trust for defending the actions Mark had taken in bad faith. Apart from the court's determination that Mark breached his fiduciary duties, this specific ruling is not challenged on appeal.

establish damages," it erred in concluding that he breached his fiduciary duties. Because Mark claims that the district court erred in concluding that a breach of fiduciary duty can exist in the absence of damages, this issue presents a question of law, which we review for correctness, granting no deference to the lower court's decision. *Smith v. Robinson*, 2018 UT 30, ¶ 8, 422 P.3d 863 ("The question of whether a duty exists is a question of law. We review questions of law under a correctness standard." (cleaned up)).

¶27 Lastly, Mark argues that the district court erred in determining that he "abused the discretion delegated to him in the trust agreement." "Mixed questions arise when a district court must apply a particular rule of law to a particular set of facts." *Utah Stream Access Coal. v. VR Acquisitions, LLC*, 2023 UT 9, ¶ 51, 531 P.3d 195 (cleaned up). "Law-like mixed questions are reviewed de novo, while fact-like mixed questions are reviewed deferentially." *Sawyer v. Department of Workforce Services*, 2015 UT 33, ¶ 11, 345 P.3d 1253.

## ANALYSIS

### I. Witness Disclosures

¶28 Mark first argues that the district court "erred in denying [his] motion to exclude [the] Appellees from testifying for inadequately disclosing their expected, summarized case-in-chief testimony." The Appellees urge us to conclude that their disclosures, even if inadequate, were harmless because Mark "knew everything a fuller disclosure would have provided."

¶29 We agree with Mark that the Appellees' summaries of their expected testimony fell short of the requirements set by rule 26(a) of the Utah Rules of Civil Procedure. But having made this determination, we nevertheless conclude that the deficiencies were harmless. We will address the inadequacy of the disclosures

and then consider the prejudice Mark suffered because of that shortcoming.

A.    Inadequate Disclosures

¶30    Rule 26(a) requires a litigant to identify "each fact witness the party may call in its case-in-chief and, except for an adverse party, a summary of the expected testimony." Utah R. Civ. P. 26(a)(1)(A)(ii). "This rule is designed to give the other side basic information concerning the subjects about which the witness is expected to testify at trial, so that the other side may determine the witness's relative importance in the case." *Salo v. Tyler*, 2018 UT 7, ¶ 55, 417 P.3d 581 (cleaned up).

¶31    Concerning the summary requirement, the advisory committee's note states,

> [T]he summary of the witness's expected testimony should be just that—a summary. The rule does not require prefiled testimony or detailed descriptions of everything a witness might say at trial. On the other hand, it *requires more than the broad, conclusory statements* that often were made under the prior version of Rule 26(a)(1) (e.g., "The witness will testify about the events in question" or "The witness will testify on causation."). The intent of this requirement is to give the other side basic information concerning the subjects about which the witness is expected to testify at trial, so that the other side may determine the witness's relative importance in the case, whether the witness should be interviewed or deposed, and whether additional documents or information concerning the witness should be sought.

Utah R. Civ. P. 26 advisory committee notes to 2011 amendment (emphasis added). *See generally RJW Media Inc. v. Heath*, 2017 UT

App 34, ¶ 22, 392 P.3d 956 ("[T]he advisory committee notes to rule 26 . . . offer persuasive, but not binding, interpretative guidance for the rule."). In *RJW Media*, we expounded on this point:

> The requirement to provide a summary of expected testimony is not merely a matter of form. Disclosure of specific facts . . . is required so that parties can make better informed choices about the discovery they want to undertake or, just as important, what discovery they want to forgo. More complete disclosures serve the beneficial purpose of sometimes giving the opposing party the confidence to not engage in further discovery. But this is only true if the potential for surprise is reduced by at least minimum compliance with the rule 26 disclosure requirements.

2017 UT App 34, ¶ 25.[4]

¶32 The summary of expected testimony here did not meet this threshold. The Appellees simply provided "broad, conclusory statements," *see* Utah R. Civ. P. 26 advisory committee notes to 2011 amendment, that Mark "failed to administer the Trust prudently, expeditiously and impartially" and that this alleged failure damaged each of the Appellees. In no way did they attempt "to give the other side basic information concerning the subjects about which the [witnesses were] expected to testify at trial," *id.*; *see also RJW Media*, 2017 UT App 34, ¶ 30 ("To minimize

---

4. While this particular analysis in *RJW Media* was made in the context of non-retained expert disclosures, it is equally applicable to witness disclosure in general. *See Hansen v. Kurry Jensen Props. LLC*, 2021 UT App 54, ¶ 48, 493 P.3d 1131 (stating that the "substance of [this] warning" concerning "the need for proper and complete disclosures . . . is equally salient for initial disclosures").

[the risk of discovery sanctions], disclosing parties should be liberally forthcoming rather than minimally compliant and risk the possible consequences of testimony exclusion.").

¶33　Accordingly, we conclude that the district court abused its discretion in finding that "while the disclosures [were] brief," they offered an adequate "summary of [the Appellees'] expected testimony." Calling them "brief" is an understatement. Instead, they were so broad and conclusory as to verge on being useless.

B.　Harmfulness

¶34　Even though the summaries of expected testimony fell far short of minimal expectations, our inquiry doesn't end there. Rule 61 of the Utah Rules of Civil Procedure provides,

> No error in either the admission or the exclusion of evidence, and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties, is ground for . . . disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Thus, "even if the trial court exceeded its discretion [in admitting testimony unsupported by adequate disclosures], an appellant has the burden to show that the error was substantial and prejudicial, meaning that the appellant was deprived in some manner of a full and fair consideration of the disputed issues by the trier of fact." *RJW Media*, 2017 UT App 34, ¶ 33 (cleaned up).

¶35　Here, we detect no harm proceeding from the Appellees' inadequate disclosures. The deficiencies of the expected testimony summaries were remedied by the fact that Mark

deposed each witness and thus was able to gain sufficient knowledge of their testimony to proceed with his defense at trial and address their evidence. Had Mark forgone deposing the Appellees, our conclusion on this point would have likely tilted the other way. Indeed, we can easily envision a scenario in which a party in Mark's position—namely, having received inadequate, broad, and conclusory summaries—might have concluded that the expense of deposing witnesses in order to learn even the basic facts about which they might testify at trial was unnecessary. However, Mark did take depositions, and the general discovery purpose of the rules was served, even if the resource-saving purpose of rule 26 was not. But we reiterate that the disclosures here were inadequate and that reversal might have resulted had Mark chosen not to depose the Appellees. These conclusions should serve "as a forewarning to all litigants who are tempted to play fast and loose with our discovery rules." *Hansen v. Kurry Jensen Props. LLC*, 2021 UT App 54, ¶ 49, 493 P.3d 1131. When the Appellees provided inadequate summaries, they "risked it all," and the fact that their "gambit did not result in disaster should offer no solace or refuge to future parties who undertake the same risk." *Id.*; *see also RJW Media*, 2017 UT App 34, ¶ 30.

¶36　We observe that the district court, while not explicitly using the words "prejudice" or "harm," implied that Mark suffered no harm from the inadequate disclosures because he "had the opportunity to depose" the Appellees. To be clear, the "opportunity to depose" is not good enough to make up for the inadequate disclosures here. Rather—at least on the facts of this case—harmlessness turns on the fact that Mark *actually deposed* the witnesses.

¶37　Mark identifies the following trial testimony offered by the Appellees as being inadequately disclosed:

1) Julie testified that Mark spent only three hours with her to learn the Trust's accounting system and never accepted her offers to help him.

2) Julie testified that Mark made accounting errors and that his reports were not an accurate representation of the Trust's assets and liabilities.

3) Julie testified that she offered to sell Mark her share of the Farm, but he declined the offer.

4) Kayleen testified that the Trust was offered $6,0000,000 for the Farm and that Mark allegedly failed to relay that offer to the beneficiaries.

5) Kayleen testified that she was "induced" to sign a contract for a land conservation program with the federal government.

6) Kayleen testified that Mark said he could hold assets for as long as he deemed necessary.

7) Kayleen testified that Mark said he was controlling the Koller Corporation to prevent the sale of its equipment in case farming operations resumed.

8) Kayleen testified that Mark said he was not distributing the Trust property because he wanted to run the Farm himself.

9) Daniel testified that Mark told him he considered the equipment "farmland" and he intended to farm the land, a plan Daniel regarded as "self-dealing."

10) Daniel testified that Mark was paying his personal credit card bills with Trust money.

11) Daniel testified that Mark had not fulfilled his fiduciary duties as trustee.

¶38 Significantly, Mark makes no effort whatsoever to identify where the *deposition* testimony fell short in addressing the testimony he identifies in the above list. He merely points to the disclosure summaries as not having identified the specific testimony. But on appeal, it's not enough for Mark to point out that the disclosure summaries fell short of expectations. After all, there is no question that the summaries were woefully inadequate. But even if the trial testimony was unsupported by adequate disclosures summarizing expected testimony, Mark also needs to show that he was harmed by this inadequacy. *See RJW*

*Media*, 2017 UT App 34, ¶ 33. Moreover, it's not enough for him to make a bald assertion of the harm; he also bears "the *burden of demonstrating* an error was prejudicial—that there is a reasonable likelihood that the error affected the outcome of the proceedings." *Covey v. Covey*, 2003 UT App 380, ¶ 21, 80 P.3d 553 (emphasis added) (cleaned up), *cert. denied*, 90 P.3d 1041 (Utah 2004). In addition, this burden means that it's "not this court's duty to comb through the record in search of a plausible argument in support" of Mark's position. *See Norton v. Hess*, 2016 UT App 108, ¶ 10, 374 P.3d 49; *see also Tanner v. Carter*, 2001 UT 18, ¶ 19, 20 P.3d 332 ("In particular, appellate advocates must never assume that it is this court's burden to comb the record for evidence supporting poorly framed arguments. We have stated this principle on multiple occasions."). Thus, Mark has not carried his burden of demonstrating harm largely because he has not addressed how, despite having deposed each of the Appellees, their trial testimony took him by surprise.

¶39   We observe that Mark has not provided the complete depositions of the Appellees in the record. Instead, he has included only a small sampling—eleven pages of Julie's deposition, seventeen pages of Kayleen's deposition, and nine pages of Daniel's deposition—of the hundreds of pages of deposition testimony offered by each of the Appellees. But it was his burden to show that he was prejudiced. By failing to show us where the deposition testimony fell short of that offered at trial, Mark has also failed to carry his burden of persuasion on appeal concerning prejudice. *See Bank of Am. v. Adamson*, 2017 UT 2, ¶ 13, 391 P.3d 196 ("An appellant that fails to devote adequate attention to an issue is almost certainly going to fail to meet its burden of persuasion.").[5]

---

5. In fact, the select portions of the deposition testimony Mark has provided strongly suggest that the Appellees addressed the very topics Mark claims took him by surprise at trial. For example, in

(continued…)

¶40 In sum, even though the court erred in determining that the Appellees' disclosures of their expected testimony were adequate, we conclude that Mark has failed to carry his burden of showing how he was harmed in light of the fact that he actually deposed the complained-of witnesses on the subjects discussed at trial. Accordingly, Mark's first claim of error fails.

## II. Computation of Damages

¶41 Mark next complains that the district court abused its discretion in not excluding "claims for tools and equipment, personal property, and farm and hunting lease revenue" even though the court determined the disclosure of damages computations was inadequate. The court determined that while the disclosures were inadequate, any inadequacy was harmless because Mark's ability to build a defense was not impaired since he was "best positioned" to know the values associated with the alleged damages.

¶42 We agree with the district court that the inadequate disclosure of damages was harmless, but we do so for a different

---

her deposition, Julie spoke of Mark's dismissive attitude toward her: "I had a phone conversation with Mark . . . when he told me to just go away and why should I care and I didn't need the money. And then he went on to add that [we siblings] are older than he is, and we're going to die before he does, so it's all going to be his anyway, so why should I care." Julie's deposition also touched on accounting errors when she asserted that Mark had "done nothing to satisfy" a liability on the Trust. Julie further addressed Mark's alleged breach of fiduciary duty. Kayleen's deposition covered issues related to the federal land conservation program, specific instances of the Trust's assets that allegedly should have been distributed by Mark, and allegations of Mark not fulfilling his fiduciary duties. Daniel's deposition contained testimony about money owed to the Trust that Mark never collected.

reason. *See Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 ("It is well settled that an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by [the] appellee, was not raised in the lower court, and was not considered or passed on by the lower court." (cleaned up)).

¶43 Here, the specific computation of damages was harmless because it was unnecessary. Rule 26 of the Utah Rules of Civil Procedure requires a party to provide "a computation of any damages claimed and a copy of all discoverable documents or evidentiary material on which such computation is based, including materials about the nature and extent of injuries suffered." *See* Utah R. Civ. P. 26(a)(1)(C). Notably, the relief sought by the Appellees and awarded by the court, insofar as that relief pertained to tools, equipment, personal property, and lease revenue, was injunctive—namely, the distribution to the beneficiaries of the property. Rather than monetary damages, the beneficiaries explicitly sought "an accounting of the Trust's assets," "an injunction requiring [Mark] to distribute the Trust's 'tools and equipment' assets," and the distribution of "Grantor's personal property to the Trust's beneficiaries as the Trust Agreement directs." Concerning the farm and hunting lease revenue, the Appellees sought "an injunctive order directing [Mark] to distribute those funds, rather than an award of damages in a specific amount." The Appellees' request for injunctive relief was thus not waived by their failure to include adequate computations because injunctive relief is obviously not capable of the computation required by rule 26. *Cf. Scott v. City of Phoenix*, No. CV-09-0875, 2011 WL 1085992, at *4 (D. Ariz. Mar. 24, 2011) (stating that equitable remedies such as "declaratory judgment, injunctive relief, and nominal damages . . . are not capable of the

computation required for the [federal rule 26] initial disclosure" (cleaned up)).

¶44 Thus, in granting this requested relief, the specific value of the property in question here was a non-issue. In other words, there was no error in the court's order because no computation of damages was needed to effect the relief requested. Accordingly, Mark's second claim of error fails.

### III. Admissibility of Expert Testimony

¶45 Mark next argues that the district court abused its discretion in admitting the testimony of Expert 1 and Expert 2.

A. Expert 1

¶46 Mark asserts that the testimony of Expert 1, who opined on the rate of pay Mark should have received for completing work done on the Trust's behalf, should have been excluded. Expert 1 had over twenty years of experience directing "financial fiduciary services for numerous individuals, estates, trusts and conservatorships" and working "with trustees, attorneys, the Veterans Administration, and individuals to provide budgeting, bill paying, reporting, estate liquidation, trust management, and tax planning services." Of note here, Expert 1 stated that Mark should have received $20 an hour for menial labor, $25 an hour for clerical work, and $35 an hour for semi-skilled labor completed on behalf of the Trust. Expert 1 arrived at the rate for semi-skilled labor by doing "some research on the internet" because he did not have the professional experience of paying "someone to do repair [work on] farm equipment." The other rates were based on his experience of paying workers for those categories of labor. Relying on rule 702(b) of the Utah Rules of Evidence, Mark now complains that the testimony based on internet research should have been excluded because Expert 1 failed "to disclose all the information and data he relied upon,"

preventing Mark "from testing the underlying information and data and ensuring it was reliably applied to the facts."

¶47    Mark's complaint about Expert 1 fails. Even if admitting Expert 1's testimony about the rate for semi-skilled labor to repair farm equipment was in error, Mark has not shown how he was harmed by its admission, as he is required to do. *See RJW Media Inc. v. Heath*, 2017 UT App 34, ¶ 33, 392 P.3d 956; *see also* Utah R. Civ. P. 61.

¶48    Indeed, it appears likely that the court did not rely on any of Expert 1's hourly rate estimates because the court explicitly stated that the Appellees had "failed to meet their burden of proof in proving a reasonable estimate of damages" related to Mark's breach. Instead of relying on Expert 1's testimony for a damages computation, the court used it—insofar as it used it at all—to support the conclusion that Mark breached his fiduciary duties by paying himself "excessive compensation from the assets of the Trust." The hourly rate for semi-skilled labor to repair farm equipment provided by Expert 1 was unnecessary for the court to reach this largely self-evident determination. The court concluded that Mark violated his fiduciary duties by paying himself $60 per hour to complete menial tasks, such as shoveling snow, mowing grass, and taking out garbage. It likely required no expert testimony to reach this conclusion, but for this determination, the court could rely on Expert 1's testimony that the market rate for menial labor was $20 per hour. Accordingly, the record supports the conclusion that Mark paid himself three times the reasonable rate for these services. Moreover, the conclusion that Mark breached his fiduciary duty was based not only on paying himself excessive compensation but also on not putting the Trust's assets to good use by, for example, renting the house. Given these considerations, we conclude that Mark has failed to demonstrate how he was harmed by the court's failure to exclude the discrete part of Expert 1's testimony that addressed the rate for semi-skilled labor to repair farm equipment.

B.      Expert 2

¶49    Mark asserts that the district court erred in relying on Expert 2's testimony on lease values because his testimony did not comply with certain professional standards and was thus unreliable. But the district court explicitly stated that it "did not give weight" to Expert 2's estimates of rental values. The admissibility of Expert 2's testimony is thus a non-issue. Instead of relying on the disputed testimony, the court determined that Mark breached his fiduciary duty in refusing "to put to economic use" the Trust's property by failing to rent out the properties. It was not Expert 2's testimony that supported this conclusion. Instead, it was the self-proving act of not renting the property at all that deprived the Trust (and beneficiaries) of the resulting income. As the court determined, there "was no good reason to have a 9,000 square foot house sit unproductive for 6 years." Simply put, the court did not need to rely on any expert testimony to conclude that refusing to even attempt to rent property constituted a breach of fiduciary duty as trustee. Accordingly, as with the admission of the complained-of portion of Expert 1's testimony, any error in admitting Expert 2's testimony was harmless.

## IV. Removal of Trustee

¶50    Mark next argues that because the district court determined that the Appellees failed to carry their burden in proving monetary damages, it erred in removing him as trustee for breach of fiduciary duty. He asserts that "it is well established that damages are a necessary element to a breach of fiduciary duty claim" and then goes on to cite caselaw in support of this proposition. *See Gregory & Swapp, PLLC v. Kranendonk*, 2018 UT 36, ¶ 44, 424 P.3d 897; *Espenschied Transp. Corp. v. Fleetwood Services, Inc.*, 2018 UT 32, ¶ 15 n.2, 422 P.3d 829; *Gables at Sterling Village Homeowners Ass'n v. Castlewood-Sterling Village I, LLC*, 2018 UT 04, ¶ 52, 417 P.3d 95. But Mark is simply wrong. All the cases he cites

involve common-law tort claims for breach of fiduciary duty, and that's not what we have here.

¶51    The removal of a trustee for breach of fiduciary duty is driven by statute in Utah, and Mark does not attempt to address this framework. Nowhere do our statutes require a showing of monetary damages to remove a trustee. *See* Utah Code § 75-7-706(2)(a) ("The court may remove a trustee if . . . the trustee has committed a serious breach of trust . . . ."). As the Appellees rightly point out, a "trustee could obviously commit a serious breach of trust without necessarily inflicting any economic harm or monetary damage," such as by failing to make an annual report or keep adequate records. *See id.* § 75-7-811(3) ("A trustee shall send to the qualified beneficiaries who request it, at least annually and at the termination of the trust, a report of the trust property, liabilities, receipts, and disbursements, including the amount of the trustee's compensation or a fee schedule or other writing showing how the trustee's compensation was determined, a listing of the trust assets and, if feasible, their respective market values."); *id.* § 75-7-808(1) ("A trustee shall keep adequate records of the administration of the trust.").

¶52    Accordingly, the district court did not abuse its discretion in removing Mark as trustee even though it determined that the Appellees had failed to prove monetary damages.

## V. Abuse of Discretion as Trustee

¶53    Mark argues that it was within his discretion under the terms of the Trust to withhold distributions that would jeopardize the Farm, which could not be sold absent the consent of all six beneficiaries. From this premise, he claims that the district court erred in determining that he abused his discretion as trustee.

¶54    Mark is mistaken about what the Trust required, which was that the Farm retain its character as farmland. The Trust explicitly stated that the Farm was "to be held in trust and

maintained." From this, Mark argues that it was "within his discretion" to retain funds to "operate a 5,000 acre farm." But the Trust in no way required that the land actually be farmed or granted the trustee discretion to operate a farm on the land in perpetuity such that all the Trust's assets could be retained for that contingency. Thus, the court did not err in its determination that Mark's nearly absolute refusal to make distributions of the Trust's assets marked an abuse of discretion under the terms of the Trust.

CONCLUSION

¶55 Mark's claims of error on the part of the district court fail in their entirety. First, he was not prejudiced by the admission of the Appellees' testimony, even though their testimony was not properly disclosed. Second, no computation of damages for tools, equipment, personal property, and lease revenue was required because the Appellees did not seek monetary damages for those categories. Third, any infirmity with the admission of the experts' testimony was harmless because the district court did not rely on such testimony. Fourth, the removal of Mark as trustee did not require a showing of damages. And fifth, we detect no error in the district court's determination that Mark abused his discretion as trustee when he refused to distribute nearly all the Trust's assets.[6]

¶56 Affirmed.

———————

6. Because Mark has not prevailed on any issue raised in this appeal, he is not entitled to attorney fees.